Irving Lang, J.
This is an application by the defendant to dismiss a complaint against the defendant on the ground that the act alleged does not constitute a crime.
In this case of first impression in the State of New York, the defendant is charged with driving while intoxicated (Vehicle and Traffic Law, § 1192) in that he drove a horse-drawn stagecoach in the City of New York while under the influence of alcohol.
The defendant, who drives a stagecoach for a restaurant in New York City with a western motif, was according to the complaint “in a horse-drawn carriage which had two horses and defendant was under the influence of alcohol while so driving and had a drinkometer reading of .25 ”.
Subdivision 2 of section 1192 of the Vehicle and Traffic Law of the State of New York provides that “whoever operates a motor vehicle or motorcycle while in an intoxicated condition * * * shall he guilty of a misdemeanor and shall he punishable by imprisonment in a penitentiary, or county jail, for not *41 more than one year, or by a fine of not more than five hundred dollars, or by both ”.
Section 125 of the Vehicle and Traffic Law defines motor vehicle as “ every vehicle * * * operated or driven upon a public highway by any power other than muscular power which includes electric power obtained from overhead trolley wires, except vehicles which run only upon rails or tracks.” It is clear that under this definition a horse-drawn stagecoach is not a motor vehicle. However, the People contend that section 1105 of the Vehicle and Traffic Law brings the defendant, his stagecoach, his horses and his acts within the purview of subdivision 2 of section 1192. Section 1105, entitled, “ Traffic laws apply to persons riding animals or driving animal-drawn vehicles ”, provides as follows: ‘ ‘ Every person riding an animal or driving an animal-drawn vehicle upon a roadway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by this title, except those provisions of this title which by their very nature can have no application. ’ ’ (Emphasis added.)
The People maintain that the purpose of the law against driving while intoxicated is to protect all citizens and property against the hazard created by a person operating a vehicle in an unsafe manner because he is drunk. They maintain that a horse-drawn vehicle which is driven by a drunken teamster is likely to cause injury to people and property in the same manner as a motor vehicle and, therefore, would not fall under the exception in the last phrase of section 1105 of the Vehicle and Traffic Law.
It should be pointed out that the language of section 1105 with respect to animal-drawn vehicles is identical to section 1231 which covers persons riding bicycles and, under the People’s interpretation, logic would dictate that a drunken bicycle driver could also be convicted under section 1192. The defendant, on the other hand, while not contradicting the People’s argument that an intoxicated stagecoach driver could constitute a danger to the community maintains that section 1105 is not applicable to section 1192 either by reference or statutory construction.
It is clear that the drafters of the Vehicle and Traffic Law were fully aware of the distinction between various types of vehicles. While motor vehicle is defined in section 125, vehicle is defined in section 159 as " every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks ’ ’, and section 1105 makes *42 persons riding animal-drawn vehicles subject to all the duties applicable to the “ driver of a vehicle
Manifestly, section 1105 is intended to make those portions of title VII, ‘ ' Buies of the Boad ’ ’, which are applicable to drivers of vehicles generally, also apply to persons driving animal-drawn vehicles. It does not attempt, however, to subject this class of persons to the special rules governing drivers of motor vehicles in section 1192.
Most ordinary traffic regulations, such as those relating to traffic control signals (§§ 1110-1113), keeping to the right and passing (§§ 1120-1128), traffic lanes (§§ 1140-1145), turning and intersections (§§ 1160-1163; 1165-1166), stopping (§§ 1170-1174), speeding (§ 1180), and parking (§§ 1200-1204), are applicable to all ' ' vehicles ’ ’. The application of these traffic regulations to horse-drawn carriages is within the legislative purpose and intent of section 1105 as shown in the 1957 revision note.
“ 1957 Bevision Note.— Section 1105 identical with section 26 of Act V [Uniform Vehicle 'Code], provides that every person riding an animal or driving an animal-drawn vehicle upon a roadway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a motor vehicle, except for those provisions which by their very nature can have no application.
“ The definition of ' vehicle ’ in section 159 includes animal-drawn vehicles. Both animal-drawn vehicles and persons riding on animals are specifically included within the coverage of the law. An equestrian can obtain the protection of a pedestrian by leading his horse (see Article 27).
‘ ‘ The language of section 1105 is essentially the same as the language of section 1231 (covering persons riding bicycles). Its purpose is to provide animal-driven vehicles and equestrians, with all the protection which the traffic laws afford all other vehicles and yet to subject them to the obligations which are assumed by all other vehicles. One of the prime considerations which necessitates uniform treatment for animal-drawn vehicles is the desire to achieve safe and unimpeded traffic for all vehicles on the highways. Another is the need for uniformity throughout the country. Most states do not give special privileges to animal-drawn vehicles or to mounted equestrians. As a result drivers from other states might endanger animal-drawn vehicles and equestrians as well as themselves by driving in ignorance of our special law relating to animals and animal-drawn vehicles. Such an out of state driver could not be expected to have knowl *43 edge of the meaning of a raised-hand signal exhibited by a person driving an animal-drawn vehicle. On the other hand, an equestrian relying on this signal might actually endanger himself. Proper protection of persons using horses makes adoption of these uniform laws essential.— Joint Legislative Committee on Motor Vehicle Problems.” (N. T. Legis. Doc., 1954, No. 36, p. 38.)_
Section 1192 has consistently referred to “motor vehicles” rather than to the broad category, ‘ vehicles ’ Section 1192 derives from subdivision 5 of section 70 of the Vehicle and Traffic Law of 1929, and not from earlier laws concerning the regulation of highway traffic. (See Wise, The History of the Vehicle and Traffic Law, McKinney’s Cons. Laws of N. Y., Book 62A, pp. XI-XV, XVII-XVIII.) Section 1192 was last amended in 1969, and the limitation to “ motor vehicle or motorcycle ” was maintained.
Two rules of statutory construction have relevance to the instant case. The first relates to the rules relating to general and particular expressions. Where there is a general and particular provision in the same statute, the particular provision is considered in the nature of an exception to the general provision. (See McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 238.)
‘ ‘ Where special provision is made for one class, a general provision that might be applicable to that class will not be deemed to include that class, but it will be assumed to be the legislative intent that the specific provision shall be applied to the class to which it refers and the general provision to all other classes for which specific provision has not been made.” (Schieffelin v. Craig, 183 App. Div. 515, 522.)
In the instant case, the special provision in section 1192 of the Vehicle and Traffic Law relating to motor vehicles is an exception to the provision in section 1105 of the Vehicle and Traffic Law relating to vehicles in general.
The second rule of statutory construction is the familiar principle of expressio unius est exclusio alterius, the expression of one thing as excluding others. (See McKinney’s Cons. Laws of N. Y., Book 1, Statutes, supra, § 240.) As the court said in Doyle v. Gordon (158 N. Y. S. 2d 248, 257): “It is a fundamental principle in the interpretation of statutes that where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded ”. It is clear, therefore, that the omission of vehicle from the provisions of section 1192 of the Vehicle and Traffic *44 Law must be interpreted to mean that the expression motor vehicle (and motorcycle) was a deliberate legislative limitation in relation to rules governing vehicles in general.
Such an interpretation also is consistent with the rule of strict construction which applies to section 1192. (People v. Strauss, 260 App. Div. 880.) It should also be noted that not only are intoxicated drivers subject to criminal and financial sanctions under section 1192, but in addition a conviction under that section results in the mandatory revocation of a license to drive a ‘ ' motor vehicle or motorcycle”. (Vehicle and Traffic Law, § 510.)
Of course this court’s ruling does not mean that tortious acts of such drunken drivers are absolved from civil liability (cf. Bernardine v. City of New York, 268 App. Div. 444).
It may be unfortunate that the mode of transportation utilized by the defendant is becoming just a nostalgic memory in our mechanized society. Perhaps the horse-drawn coach will stage a renaissance, but if, as the District Attorney maintains, it should be the public policy of this State to prohibit drivers of horse-drawn vehicles from operating such vehicles while intoxicated, it is for the Legislature of this State, and not this court, to enact such a policy.
The motion to dismiss is granted.