The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Kelly C. SMITH, Defendant-Appellee.

The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Eudell BERRY, Defendant-Appellee.

The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Gerry R. JOHNSON, Defendant-Appellee.

The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

John D. BROWN, Defendant-Appellee.

Nos. 79SA224, 79SA271, 80SA26
and 79SA313.

Supreme Court of Colorado,
En Banc.

Sept. 14, 1981.

Rehearing Denied Nov. 30, 1981.

**2**

R. Dale Tooley, Dist. Atty., O. Otto Moore, Asst. Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy, Denver, for plaintiff-appellant.

J. Gregory Walta, State Public Defender, Harvey M. Palefsky, Shelley Gilman, Deputy State Public Defenders, Denver, for defendants-appellees Gerry R. Johnson, Kelly C. Smith, and Eudell Berry.

Carl R. Mangino, Denver, for defendant-appellee John D. Brown.

LOHR, Justice.

Four cases pending before us were consolidated for disposition because they raise common issues concerning the constitutional validity of subsections (1)(a) and (b) of the second-degree sexual assault statute, section 18–3–403, C.R.S.1973 (1978 Repl.Vol. 8). In each case the prosecution appealed from an order of the trial court granting the defendant's pre-trial motion to dismiss second-degree sexual assault charges on the grounds that the statute defining the offense is unconstitutionally vague on its face and impermissibly delegates to the judiciary the legislature's power to define a crime. In one of the cases the trial judge also found the statute facially overbroad.[1] We disagree with the conclusions reached by the trial courts on these issues and so reverse the orders of dismissal.

Based on individual incidents occurring between October of 1978 and November of 1979 each of the defendants in the four cases before us was charged by information in Denver District Court with violation of section 18–3–403, C.R.S.1973 (1978 Repl. Vol. 8).[2] Our information about the offenses is limited to that contained in the

---

1. In *People v. Smith* (79SA224), *People v. Berry* (79SA271) and *People v. Johnson* (80SA26) the court considered section 18–3–403(1)(a) only and did not reach the issue of overbreadth. In *People v. Brown* (79SA313) the court considered both subsections (a) and (b) of section 18–3–403(1) and concluded that each was invalid for overbreadth as well as vagueness and unlawful delegation of legislative power. As noted at footnote 4, *infra*, the language which is

the subject of the constitutional challenges is identical in each subsection.

2. In *People v. Smith* (79SA224) and *People v. Johnson* (80SA26) the defendants were originally charged with first-degree sexual assault, section 18–3–402, C.R.S.1973 (1978 Repl. Vol. 8). The informations in both cases were subsequently amended to substitute the second-degree sexual assault charge.

charges. Prior to trial the defendants filed motions to dismiss, contending that section 18–3–403 is so vague and overbroad as to violate due process of law, *U.S.Const.* amend. XIV; *Colo.Const.* Art. II, § 25, and that it unconstitutionally delegates legislative power to the judicial branch of government, *Colo.Const.* Art. III. In each case the trial judge found section 18–3–403(1)(a) unconstitutionally vague and an unlawful delegation of legislative power and so dismissed the second-degree sexual assault charges founded on that statute. In *People v. Brown* (79SA313) the trial judge also found section 18–3–403(1)(b) void for vagueness and for unlawful delegation of legislative power, and found both subsections (a) and (b) of section 18–3–403(1) void for overbreadth as well.

The prosecution appealed pursuant to section 16–12–102, C.R.S.1973 (1978 Repl. Vol. 8), challenging all these rulings, and asserting that the defendants lack standing to challenge the statute for overbreadth. The defendants support the trial courts' rulings on the alternative basis that the challenged statutes impermissibly allow the victim to determine criminality in his or her discretion. We first address the vagueness issue, then the discretion of the victim, third the delegation of legislative power and finally the matter of overbreadth. As always, our starting place is the principle that one seeking to have a statute set aside as unconstitutional bears the burden of establishing its invalidity beyond a reasonable doubt. *E. g., People v. Albo*, 195 Colo. 102, 575 P.2d 427 (1978); *People v. Gonzales*, 188 Colo. 272, 534 P.2d 626 (1975).

I.

Because claims of vagueness are frequently asserted, we have had many occasions to set forth the applicable legal standards and the reasons upon which they are based. *See generally People in the Interest of C.M.*, Colo., 630 P.2d 593 (1981). Some of those standards bear repetition to set the stage for our consideration of the statutory language at issue here.

A statute claimed to be impermissibly vague must be closely scrutinized. *E. g., People v. Hoehl*, 193 Colo. 557, 568 P.2d 484 (1977); *People v. Blue*, 190 Colo. 95, 544 P.2d 385 (1975). If the challenged statute is capable of alternate constructions, one of which is constitutional, the constitutional interpretation must be adopted. *E. g., People v. Garcia*, 197 Colo. 550, 595 P.2d 228 (1979); *People v. Hoehl, supra.*

Several basic values are served by the prohibition of vague statutes. The requirement of fundamental fairness embodied in the concept of due process of law forbids prosecution of any individual for conduct which he would not reasonably understand to be proscribed. *E. g., People v. Garcia*, 189 Colo. 347, 541 P.2d 687 (1975). The vagueness doctrine also seeks to minimize that potential for arbitrary and discriminatory enforcement which inheres in criminal statutes of uncertain prohibitory scope. *E. g., People in the Interest of C.M., supra; People v. District Court*, 185 Colo. 78, 521 P.2d 1254 (1974). It serves as well to assure that courts and juries have adequate standards to enable them to apply the law consistently and in accord with legislative intent. *See People v. Hoehl, supra; People v. Garcia*, 189 Colo. 347, 541 P.2d 687 (1975). The commonly stated test for determining if a penal statute sufficiently serves these values is whether the statute "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application. . . ." *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *People v. Cardwell*, 181 Colo. 421, 510 P.2d 317 (1973). Although the test is easily stated, its application proves more formidable. It is to the latter task which we now turn.

The portions of section 18–3–403, C.R.S.1973 (1978 Repl. Vol. 8), relevant here describe the offense of second-degree sexual assault as follows:

*Sexual assault in the second degree.* (1) Any actor who knowingly inflicts sexual penetration or sexual intrusion on a vic-

tim commits sexual assault in the second degree if:

(a) The actor causes submission of the victim to sexual penetration by any means other than those set forth in section 18–3–402,[3] but of sufficient consequence reasonably calculated to cause submission against the victim's will; or

(b) The actor causes submission of the victim to sexual intrusion by any means of sufficient consequence reasonably calculated to cause submission against the victim's will; . . . . [4]

The defendants argue that the phrase "by any means" is so open-ended as to be without meaning. We disagree with this contention.

As with first-degree sexual assault, the core conduct prohibited by the second-degree sexual assault statute is knowing sexual penetration on a non-consenting victim.[5] The first-degree sexual assault statute prohibits conduct which by its very nature negates the existence of the victim's consent. In order to constitute first-degree sexual assault, a victim's submission to sexual penetration must be caused by a defendant's use of "physical force or physical violence," or "threats of imminent death, serious bodily injury, extreme pain, or kidnapping to be inflicted on anyone," or "[threats] to retaliate in the future against the victim, or any other person." Section 18–3–402, C.R.S.1973. The victim's submission under such circumstances hardly can be deemed consensual. *See Cortez v. People*, 155 Colo. 317, 394 P.2d 346 (1964). The second-degree sexual assault statute also prohibits knowing sexual penetration on a

**3.** Section 18–3–402, C.R.S.1973 (1978 Repl. Vol. 8) provides in relevant part:

*Sexual assault in the first degree.* (1) Any actor who knowingly inflicts sexual penetration on a victim commits a sexual assault in the first-degree if:

(a) The actor causes submission of the victim through the actual application of physical force or physical violence; or

(b) The actor causes submission of the victim by threat of imminent death, serious bodily injury, extreme pain, or kidnapping, to be inflicted on anyone, and the victim believes that the actor has the present ability to execute these threats; or

(c) The actor causes submission of the victim by threatening to retaliate in the future against the victim, or any other person, and the victim reasonably believes the actor will execute this threat. As used in this paragraph (c), "to retaliate" includes threats of kidnapping, death, serious bodily injury, or extreme pain; or

(d) The actor has substantially impaired the victim's power to appraise or control the victim's conduct by employing, without the victim's consent, any drug, intoxicant, or other means for the purpose of causing submission; or

(e) The victim is physically helpless and the actor knows the victim is physically helpless and the victim has not consented.

**4.** Subsection (1)(b) of section 18–3–403 was addressed only in *People v. Brown*, —— P.2d —— (No. 79SA313). Aside from the distinction between "sexual penetration" and "sexual intrusion," section 18–3–401(5), (6), C.R.S.1973 (1978 Repl. Vol. 8), the only difference between the two subsections is the exclusion from subsection (a) of the means used to cause submission set forth in section 18–3–402, C.R.S.1973 (1978 Repl. Vol. 8) (the first-degree sexual assault statute). *See* footnote 3, *supra*. For purposes of this opinion we treat the subsections together. Thus, reference to sexual penetration will include both sexual penetration and sexual intrusion.

**5.** That the statute makes absence of consent of the victim of critical importance is evidenced by its language and the history of the crime of sexual assault. First, the words "cause submission" imply a nonconsensual yielding to the actor's demands. *See Black's Law Dictionary*, 1594 (rev. 4th Ed. 1968). Further, the methods used to effect sexual penetration or sexual intrusion must be of sufficient consequence reasonably calculated to cause submission "against the victim's will." In the context of the law of rape, the phrase *"against the victim's will"* has been recognized as meaning *without consent. See R. Perkins, Criminal Law* 160 (2d Ed. 1969). Finally, the statute must be read with reference to the traditional crimes which are its forerunners. Common law rape and its statutory counterparts have historically made the lack of consent to sexual penetration essential to the offense. *See Davis v. People*, 112 Colo. 452, 150 P.2d 67 (1944); *Magwire v. People*, 77 Colo. 149, 235 P. 339 (1925); *R. Perkins, Criminal Law* 160 (2d Ed. 1969); Comment, *Towards a Consent Standard in the Law of Rape*, 43 *U.Chi.L.Rev.* 613 (1976); Comment, *Forcible and Statutory Rape: An Exploration of the Operation and Objectives of the Consent Standard*, 62 *Yale L.J.* 55 (1952). The language of section 18–3–403(1)(a) and (b) is consistent with this historical pattern.

non-consenting victim, but prescribes a lesser penalty because physical force or threats of serious injury are not present or because sexual intrusion and not sexual penetration is involved.

The defendants center their vagueness attack upon the language describing the conduct used to inflict nonconsensual sexual penetration: *"by any means* of sufficient consequence reasonably calculated to cause submission,"* (emphasis added). They recognize, as they must, that in *People v. Barger*, 191 Colo. 152, 550 P.2d 1281 (1976), and *People v. Beaver*, 190 Colo. 554, 549 P.2d 1315 (1976), we upheld the use of the phrase "of sufficient consequence reasonably calculated to overcome resistance" as not unconstitutionally indefinite in two prior statutes defining unlawful sexual behavior. In both cases we reaffirmed the principle that a penal statute framed so as to require the jury to determine a question of reasonableness "does not make it too vague to afford a practical guide to acceptable behavior." *People v. Beaver, supra*, at 556, 549 P.2d at 1316 (quoting from *People v. Prante*, 177 Colo. 243, 493 P.2d 1083 (1972)).

The defendants contend, however, that the statutes upheld in *Beaver* and *Barger* can be distinguished from the present statute since each limited the prohibited means to effect submission to use of threats.[6] The present statute expands the conduct prohibited to include "any means." This expansion, the defendants argue, makes the statute's coverage so amorphous as to lack any guidelines for determining guilt. We disagree. The operative language remains essentially unchanged. The crucial conduct is use of means of sufficient consequence reasonably calculated to cause nonconsensual submission to sexual penetration. That the means used need not necessarily constitute a threat does not render the statute incapable of comprehension by persons of ordinary intelligence.

A list of prohibited means is not necessary to ensure that the statute gives fair warning of its scope and provides meaningful guidelines for enforcement. The statute distinguishes between persons who obtain consent to sexual penetration and those who, by use of objectively sufficient means, threats or otherwise, cause nonconsensual submission.[7] While threats of a serious nature are illustrative of means reasonably calculated to cause nonconsensual submission, the statute's use of the broader term "any means" does not invalidate it so long as the jury must conclude that the defendant's conduct was objectively of sufficient consequence to effect the prohibited result. Intelligible limits on the conduct proscribed are present in that requirement.[8]

The defendants cite several hypothetical examples to demonstrate their claim that

> When a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears.

---

6. For example, C.R.S.1963, 40–3–402, at issue in *People v. Barger, supra*, defined the offense of gross sexual imposition as compelling submission to sexual intercourse by "any threat less than those set forth [in the rape statute then in effect] but of sufficient consequence reasonably calculated to overcome resistance."

7. The trial judge in *People v. Brown* (79SA313) held that the culpable mental state of "knowingly" applied only to the infliction of sexual penetration, leaving the culpability with which the actor causes submission as one of strict liability. We disagree. Although, as with the crime of first-degree sexual assault, the actor need not know that the victim in fact submits nonconsensually, the phrase "of sufficient consequence reasonably calculated" clearly implies that the actor must be aware that his or her conduct is sufficient in character and degree to be likely to cause nonconsensual submission. *See* section 18–1–503(4), C.R.S.1973 (1978 Repl. Vol. 8), which provides:

8. We have upheld general terms against vagueness challenges on other occasions where we found the terms sufficiently clear in context. *E. g., People v. Latsis*, 195 Colo. 411, 578 P.2d 1055 (1978) ("under circumstances strongly corroborative of [the statutorily prescribed] intent"); *People v. District Court, supra* ("under circumstances manifesting extreme indifference to the value of human life"); *People v. Gonzales*, 188 Colo. 272, 534 P.2d 626 (1975) (criminal impersonation defined as assuming a false or fictitious identity or capacity and in such identity or capacity the actor "[d]oes any other act with intent to unlawfully gain a benefit for himself or another . . . .").

the scope of the statute is unclear. However, they do not contend that any of the defendants here is charged on the basis of such conduct. "Disputes concerning the application of a criminal statute to marginal cases can be more meaningfully resolved according to the rules of strict construction of the statutory terms within the context of the specific facts of the case." *People v. Garcia*, 189 Colo. 347, 350, 541 P.2d 687, 689 (1975). As with many other crimes where it is necessary to apply a legal standard to determine whether conduct is proscribed, and particularly where the finder of fact must determine the existence of a culpable mental state, individual cases may be difficult to place on one side of the line or the other. But this does not mean that the line is not adequately drawn. "Total precision of expression is elusive and has never been demanded of the legislature." *People v. Beaver, supra* 190 Colo. at 557, 549 P.2d at 1316. Moreover, "[it is not] unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *People v. Blue, supra* 190 Colo. at 99, 544 P.2d at 388, quoting from *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952). "Only where the statute provides no discernible standards at all for defining any proscribed conduct should the harsh remedy of voiding a statute on its face be employed." *People v. Garcia, supra* 189 Colo. at 350, 541 P.2d at 689. The statute in question does not fail in this respect.

## II.

■ The defendants assert that the statutory language "causes submission" and "against the victim's will" are purely subjective standards which permit the victim to determine whether or not the sexual act had the victim's consent.[9] They attempt to analogize this to *People v. Vinnola*, 177 Colo. 405, 494 P.2d 826 (1972), in which we held that, where criminality is made to depend upon whether a bank chooses to honor

a check knowingly drawn by the accused on an account without sufficient funds, the accused is denied due process and equal protection of the laws. We conclude that the analogy is inapt.

Many crimes include as essential elements the victim's lack of consent to the proscribed activity. For example, the criminality of acts which would otherwise constitute theft, section 18–4–401, C.R.S.1973 (1978 Repl. Vol. 8), false imprisonment, section 18–3–303, C.R.S.1973 (1978 Repl. Vol. 8), and second-degree criminal trespass, section 18–4–503, C.R.S.1973 (1978 Repl. Vol. 8), is vitiated if the intended victim authorizes or consents to the actor's conduct. In those cases, as in second-degree sexual assault, it is the actor's knowing persistence in the conduct notwithstanding the lack of communicated consent which is necessary to criminal *mens rea. See People v. Andrews,* Colo., 632 P.2d 1012 (1981). In the statute found facially invalid in *Vinnola*, however, the actor's conduct was complete prior to the time the disinterested third party bank had the complete freedom to decide whether to honor or dishonor the insufficient funds check. In contrast to second-degree sexual assault and the other example cited, the actor under the statutory scheme in *Vinnola* had lost all options to desist from his proscribed conduct at the time when the bank could render that conduct criminal or innocent by its unfettered decision to honor or dishonor the check. Under circumstances such as those involved in second-degree sexual assault, we find nothing constitutionally impermissible in drawing the line of criminality between those situations involving consenting participants and those involving nonconsenting victims. This is the line which has been drawn consistently through the long history of rape law. *See* footnote 5, *supra.*

■ Nor are we persuaded by the defendant's argument that the victim's ability to characterize his or her own conduct as consensual or nonconsensual after the incident has occurred is the source of a consti-

---

**9.** The trial courts did not employ this reasoning as a basis for decision. The defendants urge it upon us as an alternative ground supporting the result reached by the courts below.

tutional deficiency. This is simply a problem of proof. Whether consent existed at the relevant time is an objective fact, not something which can be varied by a later decision of the victim. *See People v. Edmonds*, 195 Colo. 358, 578 P.2d 655 (1978). The finder of fact may indeed experience difficulty in determining whether there was consent. Resolution of such difficult factual questions is a common task for judges and juries in criminal cases, where existence of a particular *mens rea* is typically an essential element of an offense.

### III.

■ The defendants assert, and the trial courts concluded, that the challenged statutes are so lacking in standards by which to guide a judge and jury in deciding whether a crime has been committed that the legislature has unconstitutionally delegated its legislative power to define a crime to the judicial branch of government. *See Colo. Const.* Art. III. We disagree with this conclusion.

The doctrine of unconstitutional delegation of legislative power is closely related to the due process proscription of vague statutes. We have stated:

Due process of law requires that the legislature provide sufficiently precise standards to guide a judge and jury in deciding whether a crime has been committed. Failure to do so may well constitute an unlawful delegation of legislative power.

*People v. Latsis*, 195 Colo. 411, 414, 578 P.2d 1055, 1058 (1978); *cf. People v. Giordano*, 173 Colo. 567, 481 P.2d 415 (1971) (doctrine applied to a civil statute); *Olinger v. People*, 140 Colo. 397, 344 P.2d 689 (1959) (doctrine applied to a civil statute).

In part I of this opinion we concluded that section 18–3–403(1)(a), (b) (1978 Repl. Vol. 8), contains sufficiently definite and objective standards to withstand a challenge for vagueness. For the same reasons we conclude that the statute provides sufficiently precise standards to guide a judge and jury in deciding whether a crime has been committed.

### IV.

■ In *People v. Brown* (79SA313) the trial court found that the second-degree sexual assault statute is unconstitutionally overbroad as well as void for vagueness. The People contest this ruling on overbreadth, and we agree that it is erroneous.[10] Overbreadth analysis is employed to determine whether legislation is within the legitimate limits of the exercise of the state's police power, especially where it is contended that the statute infringes a constitutionally protected right. *People v. Garcia*, 189 Colo. 347, 541 P.2d 687 (1975). "The determinative factor in an overbreadth analysis is not the prohibition of acts which are commonplace, but rather the prohibition of acts which are legitimate. The standard for the determination of legitimacy is whether the legislative act was within the proper exercise of its police power. An act is within the state's police power, if it is reasonably related to the public health, welfare, and safety." *People v. Garcia*, 197 Colo. 550, 553, 595 P.2d 228, 230 (1979). Because the core conduct forbidden by the second-degree sexual assault statute is the infliction of nonconsensual sexual penetration on a victim, the statute is not overbroad. Such conduct is undoubtedly within the power of the state to regulate; its prohibition infringes no constitutional liberties.

We find that section 18–3–403(1)(a), (b) C.R.S.1973 (1978 Repl. Vol. 8), is not facially infirm and so reverse the orders of dismissal in each of the cases before us and remand the cases to the trial courts for reinstatement of the dismissed charges.

10. The People also contend that the defendants lack standing to challenge the statute for overbreadth. Our only information about the nature of the criminal conduct alleged is derived from the formal charges, which provide an un-satisfactorily meager basis to evaluate standing. Therefore, we decline consideration of that standing question and elect to resolve the overbreadth challenge on its merits.