STATE of Utah, Plaintiff and Appellant,

v.

Caral Lee OWENS and Rudell Owens,
Defendants and Respondents.

No. 17038.

Supreme Court of Utah.

Oct. 28, 1981.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, Noall T. Wootton, Steven B. Killpack, Provo, for plaintiff and appellant.

Sheldon R. Carter, Provo, for defendants and respondents.

HOWE, Justice:

The State of Utah appeals from a district court ruling that § 76–6–410(b), Utah Code Ann. 1953, is unconstitutionally vague. The correctness of that ruling is the only question before this Court.

The information filed against the defendants, Caral Lee Owens and Rudell Owens, charged them with theft by persons having custody of property pursuant to a rental agreement. The state was prepared to present evidence that the defendants had entered into an agreement in June of 1979 for a one-month rental of a trailer but at the end of the month they had telephoned and asked to keep the trailer for another month. The owner of the trailer agreed to the added month provided that a rental payment be forwarded to him. The defendants agreed to send the money, but did not. The owner did not hear from the defendants again. In December of 1979 the defendants were apprehended in another state and the trailer was recovered. They were returned to Utah to face these charges of theft.

After the defendants had plead not guilty to the charges, defense counsel filed a motion to quash the information on the ground that the statutory language and charging language of the information were unconstitutionally vague denying defendants due process of law. The motion was granted. This appeal was made to this Court, 627 P.2d 70, and dismissed on the ground that it was improperly before us because it appeared the county attorney had exceeded his authority in bringing it alone. *State v. Loddy*, Utah, 618 P.2d 60 (1980). The appeal was later reinstated upon reconsideration by this Court since the attorney general had in fact been exercising supervisory

powers over the county attorney in the case and had requested his assistance.

The statutory language in question provides:

> 76–6–410. Theft by person having custody of property pursuant to . . . rental agreement.—(1) A person is guilty of theft if: . . .
>
> (b) Having custody of any property pursuant to a rental or lease agreement where it is to be returned in a specified manner or at a specified time [he] intentionally fails to comply with the terms of the agreement concerning return so as to render such failure a *gross deviation* from the agreement. [Emphasis added.]

The pertinent language of the information is not materially different from the statute.

The motion to quash was based upon the argument that the phrase "gross deviation" is unconstitutionally vague. This case is one of first impression in Utah although a statute with very similar language was upheld as constitutional in another jurisdiction. *State v. Boyd,* 28 Or.App. 725, 560 P.2d 689 (1977). The court in that case relied upon an earlier Oregon case in which a challenge was made to a criminal statute involving mistreatment of a child, *State v. Samter,* 4 Or.App. 349, 479 P.2d 237 (1971), which held that "the fact that a criminal statute uses general language to categorize and proscribe a variety of specific acts does not necessarily render a statute void for vagueness. The determinative factor is whether there is a reasonable degree of common understanding of what is encompassed within the general terms of prohibition." 479 P.2d at 239.

Utah cases have considered the issue of vagueness in other contexts. *State v. Plum,* Utah, 552 P.2d 124 (1976), upheld the phrase "believing that it probably has been stolen." *State v. Clements,* 26 Utah 2d 298, 488 P.2d 1044 (1971), upheld a second degree burglary statute which had been challenged as vague. *State v. Nielsen,* 19 Utah 2d 66, 426 P.2d 13 (1967), upheld the phrase "perversion or obstruction of justice or the due administration of the laws" even though another section of the same statute

had earlier been found vague in *State v. Musser,* 118 Utah 537, 223 P.2d 193 (1950).

On the other hand, *State v. Bradshaw,* Utah, 541 P.2d 800 (1975), held "intentionally interferes with a law officer" to be unconstitutionally vague. That case is distinguishable from the case at bar, however, in that "interferes" may include any verbal as well as physical protest so that there is significant danger of abuse by law enforcement officials resulting in unreasonable seizure, whereas in the present case "gross" clearly means extreme and is incapable of similar misunderstanding. *State v. Musser,* supra, held "injurious to public morals" to be unconstitutionally vague since the broadness of the phrase was nowhere limited and nothing could be found to indicate that the legislature intended any limitation. However, the instant case differs from Musser in that the phrase "gross deviation" is limited by the surrounding elements of the crime in the statute as will be more fully discussed hereafter.

In *State v. Packard,* 122 Utah 369, 250 P.2d 651 (1952), we recognized that a criminal violation should be described with sufficient certainty so that persons of ordinary intelligence, desiring to obey the law, may know how to govern themselves in conformity with it. See generally *Greaves v. State,* Utah, 528 P.2d 805 (1974); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *U. S. v. Harriss,* 374 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). At the same time in the Packard case, we stated that neither absolute exactitude of expression nor complete precision of meaning can be expected. A statute may legitimately proscribe a broad spectrum of conduct with a very few words, so long as the outer perimeters of such conduct are clearly defined. *State v. Harrison,* Utah, 601 P.2d 922 (1979).

"Gross deviation" may appear to be uncertain because it necessarily refers to an agreement (in each violation) which is outside the statute. But that is simply how the statute legitimately proscribes a broad spectrum of conduct. It would be arbitrary to define a deviation as a certain number of

days for instance, since some agreements may be for rental periods of weeks or months. A return within a few days of the due date in those agreements may be quite reasonable while in other agreements where the rental period is shorter, it may not be. The statute, as it is written, avoids arbitrarily narrowing the proscribed conduct since it refers to a gross deviation from a specific agreement in each case. It deals with a broad spectrum of differing agreements equally by requiring reference to each agreement individually. Without using the term "gross deviation," that would not be possible.

We are familiar with the term "gross deviation" in other contexts and do not find that it is so unusual in its use here as to be incapable of definition. In *State v. Chavez*, Utah, 605 P.2d 1226 (1979), and *State v. McElhaney*, Utah, 579 P.2d 328 (1978), the issues did not directly involve whether the term was vague. Still, we observed the use of the term. In *Chavez* we concluded that a conviction of automobile homicide required an instruction on criminal negligence and that the applicable statute defined criminal negligence as the failure to perceive a substantial and unjustifiable risk such that the failure constituted a "gross deviation" from the reasonable man standard. In *McElhaney* the charge was aggravated assault. The defendant appealed based upon the insufficiency of the evidence and we affirmed the conviction. In that case the conviction was grounded on the reckless conduct of the defendant; and, the statute defined reckless conduct as a conscious disregard of a substantial and unjustifiable risk to the extent that the disregard constituted a "gross deviation" from the standard of care of an ordinary person. In both of these cases, as well as the case now before us, the term "gross deviation" has the common sense meaning of being an extreme deviation. In other words, the deviation is beyond minor or even substantial in its divergence; it is extreme.

As the comments following Title 17–A, Section 361 of the Maine Criminal Code, Me.Rev.Stat.Ann. 1980, indicate, the term "gross deviation" should provide increased (rather than decreased) fairness and due process for a person accused of theft of rented property. Instead of making a theft of any intentional breach of the return provision in an agreement, statutes such as ours and those in Maine and Oregon actually limit theft to intentional breaches which are gross or, in other words, extreme. Referring to a slightly differing statute from the portion of our statute under consideration, the Maine comments state:

> Subsection 1, paragraph B is designed to reach the garage mechanic who uses a vehicle left for repair as his own personal means of transportation. The use must, however, be more than minor, and must constitute a "gross deviation" from the basic reason for the vehicle having been left to him. It is necessary to have some limit of this sort on the criminal liability created by this section, and the "gross deviation" limit serves to create a jury question on the issue so that all of the circumstances can be taken into account. [Comment, Me.C.C. 17–A, Section 360.]

■ The term "gross deviation" can be compared to other statutory phrases which are valid even though they refer to standards not specifically delineated in the language of their provisions. An example is driving too fast for existing conditions.[1] There one must look outside the statute to the specific conditions and determine factually how fast too fast is. Similarly, in this case one must look to the contract terms and determine factually if the deviation is a "gross deviation." But a criminal statute is not unconstitutional because the crime contains an element of degree as to which estimates might differ. Many courts have so held. See *Smith v. Peterson*, 131 Cal. App.2d 241, 280 P.2d 522, 49 A.L.R.2d 1194 (1955), where "any excessive or unusual noise" was upheld since it established a

---

1. In § 41–6–46, U.C.A. 1953, the exact phrasing is "No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having a regard to the actual and potential hazards then existing."

standard of conduct ascertainable by persons familiar with automobiles; *State v. Ashton,* 175 Kan. 164, 262 P.2d 123 (1953), where a conviction on charges of negligent homicide and carrying an open alcoholic beverage container was affirmed even though the negligent homicide statute encompassed negligent acts and omissions in a broad rather than specifically detailed manner; *Boyce Motor Lines, Inc. v. U. S.,* 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952), where a federal statute which provided that drivers of motor vehicles who transport explosives "shall avoid so far as practicable . . . driving through congested thoroughfares. . ." was upheld; *People v. Sarnoff,* 302 Mich. 266, 4 N.W.2d 544 (1942), where a conviction for failing to keep a dwelling in "good repair" was affirmed.

"Gross deviation" is not a mathematically exact phrase but it does have a common sense meaning. Furthermore, it does not stand alone here. The other elements of the crime quite specifically modify its meaning and define the outer perimeters of conduct proscribed by the statute. In order to violate the law: (1) a person must be in custody of property pursuant to an agreement; (2) the agreement must specify the terms of return; (3) the person must deviate from the terms of the agreement as to manner or time of return; (4) the deviation must be gross or, in other words, extreme; and, (5) the person must intentionally make such a deviation. A person of ordinary intelligence would understand that under this statute a slight delay in returning property would not be a crime. He would also know that where the rental agreement specifies the manner or time of return of property and he intentionally fails to comply with the terms of the agreement, grossly deviating from the return provision, his failure to do so will constitute a crime. The elasticity in the term "gross deviation" does not operate against a defendant, but instead may work to his benefit when he has violated his contract to return property at a specified time or in a specified manner. He may always protect himself against prosecution by returning the property in the manner and on time as he agreed to do.

Reversed and remanded for trial.

HALL, C. J., OAKS, J., and DON V. TIBBS, District Judge, concur.

STEWART, J., concurs in the result.