STATE of Utah, Plaintiff and Respondent,

v.

**David A. BLOWERS and James J. Schofield, Defendants and Appellants.**

**No. 19712.**

Supreme Court of Utah.

April 11, 1986.

**43.** *Id.* at 924.

J. Keith Henderson, Ogden, for defendants and appellants.

David L. Wilkinson, Atty. Gen., Bruce M. Hall, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Defendants David A. Blowers and James J. Schofield appeal their convictions of driving under the influence of alcohol. The convictions resulted from an accident that occurred when defendants were drunk and riding horses. The circuit court found that the Utah drunk driving law applied to persons riding horses and convicted both men of driving under the influence of alcohol under section 41–6–44 of the Code. De-

fendants appealed to the district court, which upheld Schofield's conviction but reversed Blowers' conviction and ordered a new trial. Both Blowers and Schofield have appealed. We dismiss Blowers' appeal because this Court has no jurisdiction over the matter since no final judgment has been entered. U.C.A., 1953, § 78–3–5 (Repl.Vol. 9A, 1977, Supp.1985). We reverse Schofield's conviction.

Schofield and Blowers spent the afternoon of April 23, 1983, drinking beer. At about 7:30 p.m., they rode their horses down a Kaysville street toward a summer pasture. Schofield's sister rode on Blowers' horse behind Blowers. Conflicting evidence indicates either that two small boys frightened the horses or that Blowers and Schofield began racing. In any event, as the horses ran, Schofield's sister fell from Blowers' horse and suffered a severe concussion. Following a police investigation of the accident, Schofield was charged and convicted in circuit court of driving a vehicle while he was under the influence of alcohol in violation of section 41–6–44(1).[1]

Before this Court, Schofield contends that his conviction denies him due process of law because the statute under which he was convicted did not give him adequate notice that being intoxicated while riding a horse was a crime. We agree.

A criminal statute "must be sufficiently clear and definite to inform persons of ordinary intelligence what their conduct must be to conform to its requirements and to advise one accused of violating it what constitutes the offense with which he is charged." *Greaves v. State*, Utah, 528 P.2d 805, 807 (1974) (citations omitted); *accord State v. Packard*, 122 Utah 369, 374, 250 P.2d 561, 563 (1952); *State v. Owens*, Utah, 638 P.2d 1182, 1183 (1981). A statute that does not meet this test is invalid under both the due process clause of the

---

**1.** Section 41–6–44(1) states in pertinent part: It is unlawful and punishable as provided in this section for any person with a blood alcohol content of .08% or greater by weight, or who is under the influence of alcohol or any drug or the combined influence of alcohol

and any drug to a degree which renders the person incapable of safely driving a vehicle, to drive or be in actual physical control of a *vehicle* within this state.
(Emphasis added.)

fourteenth amendment to the federal constitution, *see, e.g., Connally v. General Construction Co.,* 269 U.S. 385, 391–93, 46 S.Ct. 126, ——, 70 L.Ed. 322 (1926), and its counterpart in article I, section 7 of the Utah Constitution. *Cf. State v. Bradshaw,* Utah, 541 P.2d 800, 802 (1975).

Section 41–6–44, under which Schofield was convicted, prohibits operation of a "vehicle" while under the influence of alcohol. The motor vehicle code defines a "vehicle" as "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks." U.C.A., 1953, § 41–6–1(58) (Repl.Vol. 5A, 1981). This definition cannot be legitimately read to include horses.

■■■ The operative word in the statute is "device." No dictionary we have examined defines "device" to encompass an animal, and section 41–6–1 uses the word "device" in its usual sense. Both due process and common usage restrain us from torturing the definition of a "vehicle" to include a horse. Therefore, to convict Schofield of violating section 41–6–44 would deny him due process.

The State attempts to avoid this result by relying on a few cases from other jurisdictions where horses have been found to be included within the definition of the word "vehicles" for the purposes of applying specific statutes. They include *People v. Szymanski,* N.Y.City Crim.Ct., 311 N.Y. S.2d 120, 63 Misc.2d 40 (1970), *Conrad v. Dillinger,* 176 Kan. 296, 270 P.2d 216 (1954), and *State v. Stewart,* 57 Ariz. 82, 111 P.2d 70 (1941). *Stewart* and *Szymanski* involved a wagon and team and a stage coach, respectively; therefore, they are readily distinguishable because horse-drawn carts fall within the accepted definition of "vehicles," while horses alone do not. We simply reject *Conrad* as a strained attempt to reach a desired result.

■■■ The State also attempts to uphold Schofield's conviction by arguing that section 41–6–15 somehow makes section 41–6–44 applicable to cases where intoxicated persons ride horses. Section 41–6–15 provides: "Every person riding an animal or driving any animal-drawn vehicle upon a roadway is subject to this chapter, except those provisions which by their nature can have no application." This is a classic example of a criminal statute that is too vague in its prohibitions to survive due process challenge. It is impossible for anyone to determine, even upon thoughtful reflection, which portions of the vehicle code the legislature thought should apply to animals and animal-drawn vehicles and which should not. In fact, the very wording of the section suggests that the legislature had no firm idea as to what it meant. Section 41–6–15 does not give anyone proper notice of the conduct it intends to proscribe and certainly does nothing to cure the vagueness problems inherent in section 41–6–44.

Dismissed as to Blowers; reversed as to Schofield.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

HOWE, Justice, concurring:

I concur that a horse is not a "vehicle" and that section 41–6–15 because of its vagueness violates the due process guaranty. I also believe that the statute is unconstitutional on the closely related ground that it attempts to delegate legislative power to the judiciary. In *People v. Latsis,* 195 Colo. 411, 414, 578 P.2d 1055, 1058 (1978), and again in *People v. Smith,* Colo., 638 P.2d 1 (1981), it was stated:

> Due process of law requires that the legislature provide sufficiently precise standards to guide a judge and jury in deciding whether a crime has been committed. Failure to do so may well constitute an unlawful delegation of legislative power.

The power to define crimes is legislative in character; it may not be delegated to the courts. 16 C.J.S. *Constitutional Law* § 159, and cases cited therein. A statute which delegates legislative power to the judiciary violates a constitutional mandate

for separation of powers. *State v. Smith,* 183 Conn. 17, 438 A.2d 1165 (1981).

In section 41–6–15, the legislature has declared that every person riding an animal upon a roadway is subject to all of the provisions of that chapter (the traffic code), "except those provisions which by their nature can have no application." Chapter 6 of title 41 deals with a myriad of traffic rules and regulations. They include obeying traffic signs and signals; reporting accidents; prohibiting driving while intoxicated and reckless driving; speed restrictions; regulations applicable to driving on the right side of the highway, overtaking, passing, and other rules of the road; turns and signals on starting, stopping, or turning; standing and parking; required equipment; and various miscellaneous rules. The State argues that by the application of common sense, courts can determine which provisions apply to persons riding animals and which do not. For example, it suggests that the provisions relating to driver's licenses would not be applicable, such as revocation of driver's license upon a conviction for negligent homicide under section 41–6–43.10(c) and revocation of driver's license for refusal to submit to a chemical test under section 41–6–44.10. That very argument seems to be contradicted by the State's additional argument that driving a horse requires special skill and more careful awareness than does operating a motor vehicle because horses, unlike motor vehicles, may react unpredictably.

This example demonstrates that an arguable position might be taken for and against the application of many provisions of the traffic code to persons riding animals upon the highway. Application in each instance may not always yield to our notions of common sense. The entire subject of applicability is one which needs to be considered and determined with the objective of each traffic rule in mind. This task is peculiarly one for the legislature which can solicit testimony from persons experienced in highway safety. The sorting out is not for the judges and juries to do. The judiciary should eschew the invitation to determine on a case-by-case basis

which traffic rules apply to equestrians and which do not.

For example, if while on a highway a rider breaks his arm as a result of being thrown off an unruly horse, does section 41–6–34 require the rider to notify the police? Would the rider need to fill out an accident report form as required by section 41–6–35? Could a law enforcement officer issue a citation to a rider whose horse makes an unusual noise as proscribed by section 41–6–147? Must horses be equipped with headlamps and taillights as arguably required by section 41–6–130.5(a)?

Over one hundred years ago in *United States v. Reese, et al.,* 92 U.S. 214, 221, 23 L.Ed. 563 (1875), Chief Justice Waite in commenting on a criminal statute couched in vague terms said:

> It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government.

That is exactly what the legislature has attempted to do in the instant case. By a single sweep, all provisions of the traffic code are made applicable to equestrians, but the courts are invited to make exception without any definite and ascertainable standard by which to guide them.

I acknowledge that the legislature can enact a law to delegate a power to determine a fact or a state of things upon which application of the law depends. *Tribbett v. Village of Marcellus,* 294 Mich. 607, 293 N.W. 872 (1940); *Marshall Field & Co. v. Clark,* 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294 (1892). Where it is difficult or impracticable to lay down a definite, comprehensive rule for the application of a statute, the legislature may vest discretionary power in the courts or public officials to determine whether the law applies in a particular instance. Examples are whether it would be "equitable" to disconnect certain

territory from a city, *Tribbett v. Village of Marcellus, supra;* whether an act of a person was "bona fide," *People v. Latsis, supra;* and whether a payment for services was "reasonable," *United States v. Ragen,* 314 U.S. 513, 62 S.Ct. 374, 86 L.Ed. 383 (1942). However, in the instant case, we are not called upon to merely determine whether under a certain state of facts there has been a crime committed. Instead, we are given a much broader assignment, *viz.,* whether under *any* state of facts the nature of our DUI statute lends itself to application to equestrians. That determination and judgment is a legislative call.