PEOPLE of the State of Colorado, ex rel. The CITY OF ARVADA, Petitioner,

v.

David Edward NISSEN, Respondent.

No. 81SC399.

Supreme Court of Colorado, En Banc.

Sept. 7, 1982.

Patricia C. Tisdale, Eileen A. Muench, Arvada, for petitioner.

No Appearance for respondent.

QUINN, Justice.

We granted certiorari to review a decision of the District Court of Jefferson County which affirmed a judgment of dismissal entered by the Arvada Municipal Court in a prosecution commenced by the petitioner, City of Arvada (Arvada), against the respondent, David Edward Nissen, for violating a municipal ordinance proscribing the offense of battery. The municipal court dismissed the case on the ground that the ordinance was impermissibly vague in violation of due process of law under the United States and Colorado Constitutions, *U.S. Const.* Amend. XIV; *Colo. Const.* Art. II, Sec. 25, and the judgment of dismissal was affirmed by the district court. We conclude that the ordinance is not unconstitutionally vague and, therefore, we reverse

the judgment and remand the case for further proceedings.

## I.

The facts are not in dispute. On April 12, 1981, Nissen was charged with violating section 17–8A of the Arvada City Code, which makes it unlawful "for any person to intentionally or recklessly strike or hit another." [1] Prior to the commencement of trial Nissen orally moved to dismiss the complaint. Specifically, he claimed that Arvada's battery ordinance violated due process of law because it required neither an intent to injure nor a minimum amount of force sufficient to cause an injury, and also because it did not expressly limit battery to contacts which were neither privileged nor consensual.[2] Arvada opposed the motion, contending that its evidence at trial would establish that Nissen struck the victim with intent to cause injury. The municipal court concluded that the ordinance's

failure to require an intent to injure rendered it unconstitutionally vague.[3] Arvada appealed to the district court which affirmed the judgment because, in its view, "there is no described intent given to define the act of battery as a criminal activity" and, therefore, the ordinance "allows police and judges to use large amounts of discretion as to the citing of possible offenders."

Arvada urges reversal of the judgment on the grounds that Nissen lacked standing to raise the unconstitutionality of the ordinance before the municipal court and, even with standing, the ordinance passes constitutional muster under due process standards.[4] We consider Arvada's claims separately.

## II.

■ Arvada initially argues that Nissen lacked standing to assert unconstitutional vagueness because the evidence at trial would have placed his conduct at the core of

---

1. Section 17–8, *Arvada, Colo. Code* (Supp. 1977) provides:

 "A. It shall be unlawful for any person to intentionally or recklessly strike or hit another, directly or by an object set in motion by such person.

 "B. The term 'object' as used in Subsection A, shall not include any deadly weapon, as defined by state law.

 "C. It shall be an affirmative defense to any prosecution under Subsection A that such striking was reasonably necessary for self defense."

 The general penalty section of the Arvada City Code states that, in the absence of a specific penalty provided in the ordinance itself, a violation shall be punishable by a fine of not more than $300 or by imprisonment in jail not exceeding 90 days. Section 1–9, *Arvada, Colo. Code* (Supp. 1977).

2. The gist of the last aspect of Nissen's claim can be gleaned from the following excerpt from his attorney's argument before the municipal court on the motion to dismiss:

 "The third ground is basically an amplification of the first two and is the fact that there is no limitation on the circumstances in this case. . . . If you are involved in an athletic-type situation—if you are involved in any type of situation where a person strikes or hits, say football, wrestling, whatever, in the normal course of conduct with your family— if you spank somebody—according to this you are guilty of the charge if in fact it is filed against you, regardless of the circum-

stances. I would submit that this is overly broad because it encompasses things which are obviously not criminal in nature."

3. The essential part of the municipal court's ruling, which was entered orally from the bench at the conclusion of legal argument, is as follows:

 "In reading . . . the ordinance in question, the ordinance prohibits the intentional striking or hitting or recklessly striking or hitting another. There is no requirement that the hitting be with intent to do some injury to the other person. There certainly could be numerous situations where a hitting occurred without an intent to do injury which normally would not be considered criminal but under this ordinance could certainly be charged [as] a battery."

4. Arvada also argues that the municipal court abused its discretion in ruling on the merits of the motion to dismiss because Nissen failed to comply with Arvada Municipal Court Rule 5[F], which requires that any motion raising a constitutional issue be in writing and filed not later than ten days after arraignment. The district court ruled that it was within the municipal court's discretion to dispense with its own rule and to entertain Nissen's oral motion. Because we elect to reach the constitutional merits of the ordinance, we do not consider Arvada's argument relating to the alleged abuse of discretion by the municipal court.

the ordinance's proscription. We recognize that generally "one is not entitled to assail the constitutionality of a statute except as he is adversely affected by its application to him in a given case." *People in the Interest of C.M.,* 630 P.2d 593, 594 (Colo. 1981). Nissen's challenge to the Arvada ordinance, however, rested primarily [5] on the meaning of those terms of the ordinance which constituted the basis of the prosecution pending against him—that is, "to intentionally or recklessly strike or hit another." If, indeed, the ordinance is so vague as to violate due process of law, then "[n]either a detailed charging document nor a fully developed factual record can serve to validate [it]." *People in the Interest of C.M.,* 630 P.2d at 594, citing *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888, 890 (1939). Consequently, under the circumstances present here, we conclude that Nissen had standing to challenge the ordinance. *E.g., People in the Interest of C.M., supra; L.D.S., Inc. v. Healy,* 197 Colo. 19, 589 P.2d 490 (1979); *People v. Vinnola,* 177 Colo. 405, 494 P.2d 826 (1972). We thus turn to the issue whether the ordinance is void for vagueness.

### III.

■ In addressing the issue of unconstitutional vagueness some basic rules of statutory adjudication must guide our analysis. An ordinance is presumed to be constitutional, the burden being on the party attacking the ordinance to establish its unconstitutionality beyond a reasonable doubt. *E.g., People in the Interest of C.M., supra; Bollier v. People,* 635 P.2d 543 (Colo.1981); *People v. Garcia,* 197 Colo. 550, 595 P.2d 228 (1979); *People v. Albo,* 195 Colo. 102, 575 P.2d 427 (1978). If a challenged ordinance lends itself to alternate constructions, one of which is constitutional, the constitutional interpretation must be adopted. *People v.*

*Smith,* 638 P.2d 1 (Colo. 1981); *People in the Interest of C.M., supra; People v. Fitzgerald,* 194 Colo. 415, 573 P.2d 100 (1978). Also, it must be borne in mind that due process of law has never required mathematical exactitude in legislative draftsmanship. *E.g., People v. Blue,* 190 Colo. 95, 544 P.2d 385 (1975). While an ordinance must be sufficiently specific to give fair warning of the proscribed conduct, it also often must remain sufficiently general to be capable of application under varied circumstances. *Colorado Auto and Truck Wreckers v. Dept. of Revenue,* Colo., 618 P.2d 646, 651 (1980).

■ The controlling principle in a void for vagueness challenge is whether the questioned law "either forbids or requires the doing of an act in terms so vague that men of ordinary intelligence must necessarily guess as to its meaning and differ as to its application . . . ." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926); *see also e.g., People v. Jennings,* 641 P.2d 276 (Colo. 1982); *People v. Smith, supra; People in the Interest of C.M., supra.* Two basic interests underlie this principle. First, the interest in fair notice requires the law to be sufficiently definite to alert the populace to the nature of the proscribed conduct so that they may control their actions accordingly. Second, the interest in even-handed treatment requires that the law provide specific standards for those charged with its enforcement so that arbitrary and discriminatory application will be avoided. *See, e.g., Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *People v. Jennings, supra; People v. Smith, supra; People in the Interest of C.M., supra.* It is within this principle that Arvada's ordinance must be evaluated.

The district court did not articulate a clear rationale for its affirmance of the dismissal order. Instead, it merely stated

---

**5.** We recognize that Nissen's argument before the municipal court was based in part on the possible application of the ordinance to hypothetical situations not involved in the transaction underlying the prosecution against him. Basically, however, he claimed that the essential terms of the ordinance were unconstitutionally vague on their face, regardless of the situation to which the ordinance was applied. Moreover, as we interpret the record, both the municipal court and the district court resolved Nissen's constitutional claim primarily on the basis of a facial analysis of the ordinance.

that the ordinance was unconstitutional because "there is no described intent given to define the act of battery." While this statement appears to be consistent with the reasoning of the municipal court, which based its order of dismissal on the failure of the ordinance to require an intent to injure, it is at least arguable that the district court viewed as fatal the failure of the ordinance to separately define "intentionally" and "recklessly." To ensure that we evaluate the real and intended basis of the district court's decision, we will address both possible infirmities as well as the other arguments advanced by Nissen before the municipal court, namely, the ordinance's failure to require an amount of force sufficient to cause an injury and the possible applicability of the ordinance to what would otherwise might be considered privileged or consensual contacts.

We do not see how the failure of the ordinance to require an intent to injure raises a problem of unconstitutional vagueness. It goes without saying that the decision to include or exclude a particular element in defining unlawful conduct is, in the first instance, a matter of legislative prerogative. The Due Process Clause generally is not implicated by such policy decisions unless it can be said that the enactment "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson v. New York,* 432 U.S. 197, 202, 97 S.Ct. 2319, 2322, 53 L.Ed.2d 281, 287 (1977); *see also People v. Ledman,* 622 P.2d 534 (Colo. 1981). We know of no principle enshrining an intent to injure as a fundamental principle of justice in any battery prosecution. On the contrary, at common law the gist of the action for battery was not the intent to injure but the absence of consent by the victim to the offensive contact with his person. *W. Prosser, Law of Torts* 36 (4th ed.1971). In our view the decision of the Arvada City Council to define battery without reference to a specific intent to injure another does not raise a meritorious claim under the void for vagueness doctrine.

Nor does the failure of the ordinance to separately define the words "intentionally" and "recklessly" render the statute unconstitutionally vague. "This court ... has never required that every statutory word or phrase be specifically defined," and we have "often made reference to standard dictionaries and to the case law to determine the probable legislative intent in using a particular word." *People v. Blue,* 190 Colo. at 100, 544 P.2d at 388. In common parlance an intentional act is one performed for the purpose of achieving a desired object. *See Webster's Third New International Dictionary* 1176 (3d ed. 1961). A person may be said to act recklessly when his action is grossly heedless of consequences. *See Webster's Third New International Dictionary* 1896 (3d ed. 1961). The terms "intentionally" and "recklessly" are not strangers to the average person. Law enforcement officers have a practical understanding of their significance to human conduct, and judges and juries are quite capable of applying them to varied circumstances in the resolution of legal disputes. When considered in the context of striking or hitting another, we are satisfied that the terms "intentionally" and "recklessly" are sufficiently clear to persons of ordinary intelligence to afford a practical guide for law-abiding behavior and are capable of application in an even-handed manner by those responsible for enforcing the law. *See, e.g., People v. McKnight,* 626 P.2d 678 (Colo. 1981) (the word "emergency" in statute defining crime of driving after judgment prohibited not unconstitutionally vague); *People v. Latsis,* 195 Colo. 411, 578 P.2d 1055 (1978) (the terms "bona fide" and "under circumstances strongly corroborative of ... intent," used in criminal solicitation statute, satisfy due process standards); *People v. Albo, supra* ("extreme pain" in context of sexual assault statute not unconstitutionally vague); *People v. Blue, supra* (the term "use of force or violence" in felon-gun law not violative of due process). While separate definitions of the culpability terms of an ordinance might be the preferable legislative option, the omission of such definitions under the circum-

stances of this case is not a deficiency of constitutional dimension.

 We also find no merit in Nissen's argument before the municipal court that the ordinance is void because it fails to require a sufficient amount of force to cause an injury. Such requirement did not exist at common law which, according to Blackstone, considered "[t]he least touching of another's person willfully, or in anger, [to be] a battery:"

"[F]or the law cannot draw the line between different degrees of violence, and therefore totally prohibits the first and lowest stage of it: every man's person being sacred, and no other having a right to meddle with it, in any the slightest manner." 3 *W. Blackstone, Commentaries on the Laws of England,* 120 (E. Christian ed. 1822), quoted in *United States v. Stewart,* 568 F.2d 501, 505 (6th Cir. 1978).

There is no reason to construe a battery ordinance as requiring a degree of force sufficient to cause injury when the ordinance itself is noticeably silent on the matter. *See, e.g., United States v. Stewart, supra* (construing federal battery statute, 18 U.S.C. 113(e)); *United States v. Martin,* 536 F.2d 535 (2d Cir. 1976), *cert. denied* 429 U.S. 862, 97 S.Ct. 167, 50 L.Ed.2d 141 (1976). In our opinion it was within the discretion of the Arvada City Council to define battery without reference to the amount of force employed by the actor or the degree of injury sustained by the victim.

 Finally, we find no merit in Nissen's other argument that the ordinance might arguably encompass privileged or consensual contacts within its proscription. This argument not only ignores the unlawful character of the contact which historical usage has placed on the term "battery" over the centuries, but also disregards the obvious import of the language contained in the ordinance itself. The ordinance requires that the actor "intentionally or recklessly strike or hit another." This proscription certainly relates to conduct which involves much more than the traditional hand shake or back-pat implicit in normal social intercourse. Moreover, we do not view the ordinance's failure to categorize certain defenses traditionally associated with battery, such as privilege and consent, as indicative of a legislative intent to abrogate these defenses when there is some evidence to support them. *Cf. People v. Jennings, supra* (common law privilege relating to parental discipline applicable to child abuse prosecution); *People v. Smith, supra* (statutory offense of second degree sexual assault to be read with reference to "the traditional crimes which are its forerunners," namely common law rape and its statutory counterparts). Admittedly, there might be some difficulty in applying the ordinance to certain situations. Such difficulty, however, is frequently present in cases involving the application of a legislative standard to close questions of fact and, by itself, does not amount to a constitutional infirmity. *People v. Garcia,* 189 Colo. 347, 541 P.2d 687 (1975). Viewed within the framework of the void for vagueness doctrine, we are satisfied that the ordinance is not so totally lacking in discernible standards of conduct as to require its invalidation.[6]

The judgment is reversed and the cause is remanded to the district court with directions to return the case to the Arvada Municipal Court for reinstatement of the summons and complaint and for further proceedings in accordance with the views herein expressed.

---

**6.** We have not discussed the issue of unconstitutional overbreadth in our analysis of the ordinance because, in our opinion, it has no legal significance to the constitutional issue before us. The doctrine of unconstitutional overbreadth applies to legislative enactments which threaten the exercise of First Amendment interests or other fundamental constitutional rights. *E.g., People v. Mason,* 642 P.2d 8 (Colo. 1982); *People v. Garcia,* 197 Colo. 550, 595 P.2d 228 (1979); *People v. Weeks,* 197 Colo. 175, 591 P.2d 91 (1979). Although Nissen made a passing reference to overbreadth in his argument before the municipal court, he made no showing that speech or some other basic constitutional right was threatened by the enforcement of the statute. In addition, as we understand the respective rulings, neither the municipal court nor the district court determined that any First Amendment interest or other fundamental constitutional right was implicated by the ordinance.