The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Mark FORD, Ted Jarosz, Lawrence McKay, Modern Books of Colorado, Clarence Neville, James Johnston, Mitchell Kelloff, Myrna Bastian, Clint Hopkins, Darryl Deighton, Gordon Mizell, and Richard Snyder, Defendants–Appellees.

MOUNTAINS AND PLAINS BOOKSELLERS ASSOCIATION; Tattered Cover Bookstore, Inc., a Colorado corporation; Joyce Knauer; Gordon's Books, Inc., a Colorado corporation; Cathy Nachtigal, d/b/a Bookplace of Applewood, Plaintiffs–Appellants,

v.

Norman EARLY in his official capacity as District Attorney for the City & County of Denver; J.D. MacFarlane in his official capacity as Manager of Safety for the City & County of Denver; and Thomas Coogan in his official capacity as Chief of Police for the City & County of Denver, Defendants–Appellees.

735 EAST COLFAX, INC., d/b/a Kitty's Pleasure Palace, Plaintiff–Appellant,

v.

Norman EARLY; J.D. MacFarlane; and Thomas Coogan, Defendants–Appellees.

Nos. 87SA61, 87SA480 and 88SA3.

Supreme Court of Colorado, En Banc.

May 15, 1989.

Rehearing for 87SA480 Denied June 5, 1989.

Barney Iuppa, Dist. Atty., Robert M. Brown, Chief Deputy Dist. Atty., Linda A. McMahan, Deputy Dist. Atty., Colorado Springs, for the people.

Arthur M. Schwartz, P.C., Arthur M. Schwartz, Michael W. Gross, Bradley J. Reich, Denver, for Mark Ford, et al.

Moya and Recht, Daniel N. Recht, Denver, Peter H. Ney Littleton, for Mountains and Plains Booksellers Ass'n, et al.

Norman S. Early, Jr., Dist. Atty., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Denver, for Norman Early, et al.

Arthur M. Schwartz, P.C., Arthur M. Schwartz, Michael W. Gross, Denver, for 735 East Colfax, Inc.

ROVIRA, Justice.

These appeals concern the constitutionality of the Colorado obscenity statute, §§ 18–7–101 to –105, 8B C.R.S. (1986). We have elected to consolidate three separate cases, for the purposes of this opinion, because each challenges the validity of the obscenity statute based upon the first amendment to the United States Constitution, article II, section 10 of the Colorado Constitution, and the due process clause of each constitution. We hold that the obscenity statute is not vague or overbroad, does not violate due process requirements, and it therefore passes constitutional muster. We do not address the constitutionality of section 18–7–104.5, which provides civil remedies to neighboring property owners, because there is no justiciable issue or legal controversy in existence at this time.

I.

In *People v. Ford,* the People instituted an enforcement proceeding against defendants, the owners and sales clerks of adult bookstores (booksellers) in Colorado Springs, charging them with promoting obscene materials in violation of sections 18–7–101 and –102, 8B C.R.S. (1986). The trial court granted defendants' motion to dismiss on the ground that the obscenity statute is unconstitutional. The court held that it is constitutionally impermissible to impose criminal liability on the basis of a

hypothetical "average person's" state of mind; that the statute is vague because criminal liability is premised on a community opinion rather than a standard of conduct; that article II, section 10 of the Colorado Constitution prohibits the criminalization of promoting books, magazines, and motion picture films based upon a standard of community tolerance; and that the statute's lack of a true criminally culpable *mens rea* serves to exacerbate the vagueness problems. The People appeal from the order of dismissal.

In *Mountains and Plains Booksellers Association v. Early*, a booksellers' association instituted a declaratory judgment action seeking to have the current version of the Colorado obscenity statute declared unconstitutional. This suit was consolidated with *735 East Colfax, Inc. v. Early*, a separate action requesting declaratory and permanent injunctive relief against the enforcement of the obscenity statute. After a trial, the court issued an order declaring the statute constitutional. On appeal, the booksellers challenge this conclusion on several grounds which we will discuss in turn.

## II.

The statute under review represents the General Assembly's latest attempt to formulate an obscenity statute which will pass constitutional muster. Former versions of this statute were declared unconstitutional in *People v. New Horizons, Inc.*, 200 Colo. 377, 616 P.2d 106 (1980), and *People v. Tabron*, 190 Colo. 149, 544 P.2d 372 (1975). In *People v. Seven Thirty–Five East Colfax, Inc.*, 697 P.2d 348 (Colo.1985), this court invalidated certain portions of the obscenity statute, but found the remaining portions to be constitutional. Before addressing the merits of the vagueness, overbreadth, and due process issues, we first consider the booksellers' claim that the government must bear the burden of establishing the constitutionality of any law regulating the exercise of first amendment rights.

██ We have consistently held that a statute is presumed to be constitutional, and the party attacking the statute has the burden of proving it unconstitutional beyond a reasonable doubt. *People v. French*, 762 P.2d 1369 (Colo.1988); *Cox v. People*, 735 P.2d 153 (Colo.1987); *People v. Schoondermark*, 699 P.2d 411 (Colo.1985). We have applied this rule even in cases in which it is alleged that a statute infringes on first amendment freedoms. *See People v. French*, 762 P.2d 1369 (Colo.1988); *People v. Moore*, 674 P.2d 354 (Colo.1984); *People v. Enea*, 665 P.2d 1026 (Colo.1983).

The booksellers contend, however, that where first amendment rights are allegedly infringed, the state bears the burden of demonstrating the constitutionality of the statute. In support of this contention, they direct us to a number of recent federal decisions which place the burden of proof on the state. *See, e.g., New Jersey Citizen Action v. Edison Township*, 797 F.2d 1250 (3d Cir.1986); *City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547 (7th Cir.1986); *ACORN v. Municipality of Golden*, 744 F.2d 739 (10th Cir.1984); *ACORN v. City of Frontenac*, 714 F.2d 813 (8th Cir.1983). In addition, they point out that at least one Colorado case has indicated that an ordinance would not be presumed constitutional when it impinges on first amendment freedoms, citing *City of Lakewood v. Colfax Unlimited Association*, 634 P.2d 52 (Colo.1981).

Many of the federal cases which place the burden of proving the constitutionality of a statute on the state cite *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971), as authority for this proposition. However, the court in *Keefe* held only that the imposition of a prior restraint on expression is presumed unconstitutional. We too have held that any system of prior restraint on first amendment freedoms is subject to a heavy presumption against its constitutional validity. *See People v. Seven Thirty–Five East Colfax, Inc.*, 697 P.2d 348 (Colo.1985). The United States Supreme Court has never held that the first amendment requires that a statute proscribing obscenity be presumed unconstitutional where no prior restraint is involved. Because a presumption

of invalidity is not constitutionally required, and because we see no reason to treat the burden of proof differently in first amendment challenges than in other constitutional challenges, we believe that the booksellers retain the burden of establishing that the obscenity statute is invalid.[1]

### III.

Section 18–7–101(2), 8B C.R.S. (1986), defines "obscene" as:

(2) "Obscene" means material or a performance that:

(a) The average person, applying contemporary community standards, would find that taken as a whole appeals to the prurient interest in sex;

(b) Depicts or describes:

(I) Patently offensive representations or descriptions of ultimate sex acts, normal or perverted, actual or simulated, including sexual intercourse, sodomy, and sexual bestiality; or

(II) Patently offensive representations or descriptions of masturbation, excretory functions, sadism, masochism, lewd exhibition of the genitals, the male or female genitals in a state of sexual stimulation or arousal, or covered male genitals in a discernibly turgid state; and

(c) Taken as a whole, lacks serious literary, artistic, political, or scientific value.

Thus, the section incorporates that definition of obscenity which was approved by the United States Supreme Court in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).[2] The phrase "patently offensive" is further defined in section 18–7–101(4), 8B C.R.S. (1986), to mean "so offensive on its face as to affront current community standards of tolerance."

In *People v. Ford,* the trial court held that article II, section 10 of the Colorado Constitution prohibits the criminalization of promoting books, magazines, and films based upon a standard of community "tolerance." Additionally, the booksellers argue that a tolerance standard impermissibly infringes on speech which is protected by the first amendment to the United States Constitution.[3] Finally, they contend that the lack of a Colorado tradition of prohibiting obscenity indicates that the constitutional framers intended to provide unlimited constitutional protection to freedom of speech.

In *People v. Seven Thirty–Five East Colfax, Inc.,* 697 P.2d 348 (Colo.1985), we held that the term "patently offensive" could not be defined in terms of a community standard of decency. We stated that a community standard of tolerance is required, at a minimum, by the United States and Colorado Constitutions, but noted that the issue of whether the tolerance standard is constitutionally sufficient was not before us at that time. We are now squarely faced with this issue.

### A.

First we examine whether the tolerance standard is constitutionally sufficient under the first amendment to the United States Constitution. The United States Supreme Court has often spoken in terms of

---

1. Our decision does not affect the validity of the court's opinion in *City of Lakewood v. Colfax Unlimited Association,* 634 P.2d 52 (Colo.1981). There, a zoning ordinance prohibited the future dissemination of constitutionally protected speech. As such, the ordinance constituted a prior restraint, and was thus presumptively unconstitutional.

2. The three-part test articulated in *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973), for identifying obscene material is:

(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest ...

(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

3. The first amendment guarantee that "Congress shall make no law ... abridging the freedom of speech" is applicable to the states under the fourteenth amendment. *Douglas v. City of Jeannette,* 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943).

material which is "tolerated" or "accepted" by the community when discussing the "patently offensive" prong of the obscenity test. Thus, in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), when discussing the requirements of a community standard, the Court stated: "It is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found tolerable in Las Vegas, or New York City." *Id.* at 32, 93 S.Ct. at 2619. The Court went on to state: "The use of 'national' standards, however, necessarily implies that materials found tolerable in some places, but not under the 'national' criteria, will nevertheless be unavailable where they are acceptable." *Id.* at 32 n. 13, 93 S.Ct. at 2619 n. 13. In *Smith v. United States*, 431 U.S. 291, 305, 97 S.Ct. 1756, 1766, 52 L.Ed. 2d 324 (1977), the Court held that "contemporary community standards must be applied by juries in accordance with their own understanding of the tolerance of the average person in their community...." In *New York v. Ferber*, 458 U.S. 747, 761 n. 12, 102 S.Ct. 3348, 3357 n.12, 73 L.Ed.2d 1113 (1982), the Court stated: "It would be equally unrealistic to equate a community's toleration for sexually oriented material with the permissible scope of legislation aimed at protecting children from sexual exploitation." Finally, in *Pope v. Illinois*, 481 U.S. 497, 499, 107 S.Ct. 1918, 1921, 95 L.Ed.2d 439 (1987), the Court distinguished the third prong of the *Miller* obscenity test from the two prongs which were to be measured against community standards, stating: "Just as the ideas a work represents need not obtain majority approval to merit protection, neither, insofar as the First Amendment is concerned, does the value of the work vary from community to community based on the degree of local acceptance it has won." These cases indicate that, in contrast to the third prong of the *Miller* test, the United States Supreme Court expects the patent offensiveness of material to be determined by a standard of what a particular community will accept or tolerate.

■ In addition, numerous federal and state courts have adopted a community standard of tolerance. *See United States v. Various Articles of Obscene Merchandise*, 709 F.2d 132 (2d Cir.1983); *United States v. Peraino*, 645 F.2d 548 (6th Cir. 1981); *Red Bluff Drive-In v. Vance*, 648 F.2d 1020 (5th Cir.1981); *Goldstein v. Allain*, 568 F.Supp. 1377 (N.D.Miss.1983); *Home Box Office v. Wilkinson*, 531 F.Supp. 987 (D.Utah 1982); *City of Portland v. Jacobsky*, 496 A.2d 646 (Me.1985); *Leech v. American Booksellers Ass'n*, 582 S.W.2d 738 (Tenn.1979). We believe that it is constitutionally permissible to measure the patent offensiveness of material against a community standard of tolerance under the United States Constitution.

### B.

■ We must now examine the Colorado Constitution to determine whether the obscenity definition passes constitutional muster. Article II, section 10 of the Colorado Constitution provides:

> No law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact.

Although we stated that obscenity is unprotected by section 10 of article II of the Colorado Constitution in *People v. Seven Thirty-Five East Colfax, Inc.*, 697 P.2d 348 (Colo.1985), the booksellers urge us to reject that conclusion and hold that the constitutional framers had no intention to limit constitutional protections for freedom of expression. They contend that because Colorado lacks a consistent tradition of censoring obscenity, and the first obscenity statute was not passed until 1885, the constitutional framers considered obscenity to be protected expression in 1876. Further, they argue that we should adopt the historical analysis made by the Oregon Supreme Court in *State v. Henry*, 302 Or. 510, 732

P.2d 9 (1987),[4] so as to find that the framers had no intention to exempt obscenity from the constitutional protection provided in article II, section 10 of our constitution. To aid us in evaluating the booksellers' arguments, we look to the status of obscenity statutes both in Colorado and nationwide at the time that our constitution was adopted in 1876.

Contrary to the booksellers' contention, Colorado has a consistent history of proscribing obscenity. While still a territory, the Colorado legislature prohibited the importation or dissemination of obscenity. *See* Rev.Stat. of Colo., ch. XXII, div. X, § 129 (1868).[5] This proscription against obscenity was immediately reenacted after Colorado adopted its constitution and achieved statehood. *See* Gen.Laws of Colo., ch. XXIV, div. X, § 133 (1877). The fact that Colorado proscribed obscenity prior to and immediately after adoption of our free speech provision is evidence that the framers of our constitution did not consider obscenity to be protected expression. It is significant that, although obscenity was proscribed prior to adoption of the constitution, the framers gave no indication that it would henceforth be protected. This silence on their part, in the face of an outright prohibition on disseminating obscenity, indicates that such material was considered an "abuse" of the freedom of speech. Accordingly, we reject the booksellers' first contention.

We also decline to adopt the historical analysis in *State v. Henry*, 302 Or. 510, 732 P.2d 9 (1987), because the Oregon court concentrated on the state of the law in the early 19th century rather than at the time our constitution was adopted in 1876. We believe that the status of obscenity regulation across the nation in the early 1870's is more relevant in assessing whether the framers of our constitution intended to protect obscenity.

Our constitution contains two provisions which protect the freedom of expression: First, that no law should be passed which would impair the freedom of speech; and second, that every person is free to speak, write, or publish on any subject, but is responsible for any abuse of that liberty. At the time that our constitution was adopted, twenty-six states had virtually identical provisions in their state constitutions.[6] In the vast majority of those states, obscenity was proscribed by statute prior to the adoption by Colorado of its constitution in 1876.[7]

4. In *Henry*, the Oregon Supreme Court analyzed its constitutional guarantee of freedom of expression, which is very similar to our Colorado provision. The court held that obscenity was not a historical exception to the freedom of speech, and thus obscene expression was protected under the Oregon Constitution.

5. Revised Statutes of Colorado, ch. 22, div. 10, § 129 (1868), provides:
   If any person shall hereafter bring or cause to be brought or imported into this territory, for sale, or shall sell or offer to sell any obscene book, pamphlet or print, every such person shall, on conviction, be fined in a sum not less than twenty-five dollars, nor more than two hundred dollars.

6. *See* Ark. Const. art. II, § 6; Cal. Const. art. I, § 2; Fla. Const. of 1868, Declaration of Rights § 9; Ga. Const. of 1861, art. I, § 1, ¶ 15; Ind. Const. art. I, § 9; Iowa Const. art. I, § 7; Kan. Const., Bill of Rights § 11; Ky. Const. of 1850, art. XIII, § 9; La. Const. of 1868, Bill of Rights, art. IV; Me. Const., Declaration of Rights § 4; Md. Const., Declaration of Rights, art. 40; Mich. Const. of 1850, art. IV, § 42; Minn. Const. art. I, § 3; Mo. Const. of 1875, art. II, § 14; Nev. Const. art. I, § 9; N.J. Const. of 1844, art. I, § 5; N.Y. Const. art. I, § 8; N.C. Const. of 1868, Declaration of Rights § 20; Ohio Const. art. I, § 11; Or. Const. art. I, § 8; Pa. Const. art. I, § 7; S.C. Const. of 1868, art. I, § 7; Tenn. Const, art. I, § 19; Tex. Const. of 1876, art. I, § 8; Va. Const. art. I, § 12; Wis. Const. art. I, § 3.

7. *See* Ark.Dig. of Stat., ch. 48, § 1823 (1894) (Act of Feb. 8, 1859); Cal.Penal Code, tit. IX, ch. VIII, §§ 311–314 (1872); Stat. of Fla., ch. 1637, sub. ch. 8, § 15 (August 6, 1868); Rev.Stat. of Ind., ch. 53, art. III, § 122 (1843); Iowa Rev. Laws, part IV, tit. 23, ch. 172, § 4359 (1860); La.Penal Code, Crimes & Punishments, tit. XVI, ch. II, art. 340 (1833); Me.Rev.Stat., tit. XI, ch. 124, §§ 13–14 (1871); Md.Pub.Gen.Laws, art. 30, § 78 (1860); Mich.Rev.Stat., tit. XXX, ch. 158, §§ 13–14 (1846); Minn.Pub.Stat., ch. 96, § XI (1859); N.J.Rev.Stat., Crimes, ch. III, §§ 44–47 (1877) (P.L.1868, p. 1160, P.L.1869, p. 1115 combined); N.Y.Penal Code, ch. VII, §§ 1317, 1319 (1868); Crim.Code of Ohio, tit. I, ch. 9, §§ 9–10 (1877) (April 27, 1872); Stat. of Or., Crimes & Punishments, ch. 11, § 10 (1855) (post-statehood, reenacted, *see* Hill's Annot. Laws of Or., tit. 2, ch. 7, § 1870 (1887)); Pa.Stat. Law, art. LX; § 7983 (1920) (P.L. 382, § 40,

In addition, nine states had adopted either the prohibition impairing the freedom of expression or the grant of freedom of speech subject to responsibility for its abuse, but not both.[8] Of these, seven states had coexisting statutes proscribing obscenity.[9]

The fact that obscenity proscriptions were so prevalent, and the fact that obscenity was prohibited in the face of constitutional provisions similar or identical to that adopted in Colorado, lead us to the conclusion that obscenity was generally considered an "abuse" of the freedom of speech. The framers were not unaware of the status of the laws in other states when our constitution was adopted. In fact, the framers looked to other states as models for almost all of our constitutional provisions. We believe that when the constitutional convention adopted article II, section 10, it accepted the widely held concept that obscenity was an abuse of the freedom of speech. We therefore find no merit in the booksellers' contention that the framers intended to provide unlimited protection to freedom of expression, and reaffirm our view that obscenity is not protected by the Colorado Constitution. *See People v. Seven Thirty–Five East Colfax, Inc.*, 697 P.2d 348 (Colo.1985).

The object of article II, section 10 is to "guard the press against the trammels of political power, and secure to the whole people a full and free discussion of public affairs." *Cooper v. People*, 13 Colo. 337, 362, 22 P. 790, 798 (1889). Our decision that obscenity is unprotected by the Colorado Constitution in no way impedes these objects.

## C.

■ We also believe that the "tolerance" standard is acceptable under the Colorado Constitution. We have previously stated, and reaffirm today, that our constitution extends broader protection to freedom of expression than does the first amendment to the United States Constitution. *See People v. Seven Thirty–Five East Colfax, Inc.*, 697 P.2d 348 (Colo.1985). In order to be constitutionally sufficient, the definition of "patently offensive" must incorporate a standard which protects all but the most insufferable of sexually explicit material. Although both federal and state courts have approved definitions of "patently offensive" which incorporate community standards of decency, acceptance, or tolerance, we believe that the tolerance standard better protects freedom of expression, and is the only standard of the three which would satisfy the Colorado Constitution. Whereas "decency" implies a community standard of what is proper, and "acceptance" connotes approval, tolerance stretches the community's standards to their outermost limits. When a tolerance standard is employed, material is not offensive unless the community cannot endure it.

■ The booksellers argue that a tolerance standard is impermissible because the constitutional guarantees of freedom of speech are designed to protect precisely that material which would otherwise not be tolerated. It must be remembered that the tolerance standard is only employed to determine whether material is "patently offensive." The protection sought by the booksellers is actually found in the third prong of the obscenity test. Even if material is directed to the prurient interest in

March 31, 1860); Code of Tenn., part IV, tit. 1, ch. 8, art. II, § 4847 (1858); Tex.Penal Code, § 399 (1858) (*post-statehood, reenacted in Tex. Rev.Stat., Penal Code, tit. 10, ch. 5, art. 343 (1879)*); Code of Va., tit. 54, ch. 196, § 11 (1860); Wis.Rev.Stat., part IV, tit. XXX, ch. 139, §§ 11–12 (1849).

**8.** *See* Ala. Const. of 1875, art. I, § 5; Conn. Const. art. I, §§ 6–7; Del. Const. art. I, § 5; Ill. Const. of 1870, art. II, § 4; Mass. Const., Declaration of Rights, art. XVI; Neb. Const. art. I,

§ 5; N.H. Const., Bill of Rights § 22; R.I. Const. art. I, § 20; Vt. Const., Declaration of Rights, art. 13.

**9.** *See* Conn.Rev.Stat., Crimes & Punishments, ch. X, §§ 135–136 (1849); Rev.Laws of Ill., Crim.Code, 11th div., § 124 (1833); Mass.Rev. Stat., part IV, tit. I, ch. 130, §§ 10–11 (1836); Neb.Gen.Stat., ch. XX, § 206 (1873); N.H.Rev. Stat., tit. XIV, ch. 113, § 2 (1842); Pub.Laws of R.I., Crimes & Punishments §§ 91–92 (1844); Vt.Rev.Stat., tit. 23, ch. 99, § 10 (1839).

sex, and is patently offensive to the community, it remains protected unless taken as a whole, it lacks serious literary, artistic, political, or scientific value. *Miller,* 413 U.S. at 26, 93 S.Ct. at 2616. The value of such material may not be determined by community standards. Rather, the value of the material must be assessed by an objective standard. *Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987). The third prong of the obscenity test prevents the literary, artistic, political, or scientific value of material from being held hostage to a particular community's level of tolerance. In this manner, constitutional protection of material which would not otherwise be tolerated in a community is preserved.

We hold that defining "patently offensive" in terms of community standards of tolerance does not impermissibly reach speech protected by either the United States or Colorado Constitutions, and therefore is not overbroad.

### IV.

The booksellers contend that the obscenity statute offends due process because: (1) it is vague; (2) liability is premised on an opinion of the community rather than conduct of the individual; (3) it premises liability on the mental state of a third party; and (4) it premises liability on the subsequent discretionary actions of a third party. The trial court, in *People v. Ford,* found the obscenity statute to be constitutionally infirm in all four of these respects. We disagree.

### A.

■ The booksellers' first two contentions may be reduced to a single allegation that the obscenity statute is impermissibly vague, and therefore violates due process. A law is impermissibly vague if it is not sufficiently definite to alert the populace to the nature of the proscribed conduct, so that people may control their actions accordingly, or, if the law does not provide specific standards so as to avoid arbitrary and capricious enforcement. *See People v. Becker,* 759 P.2d 26 (Colo.1988); *Exotic*

*Coins, Inc. v. Beacom,* 699 P.2d 930 (Colo. 1985).

■ While a statute must be sufficiently specific to give fair warning of the proscribed conduct, it need not be drafted with mathematical precision. *Becker,* 759 P.2d at 31. Here, a person is proscribed from disseminating obscene material. Such material must depict one of the acts enumerated in section 18–7–101(2)(b), 8B C.R.S. (1986), and must be the type of material which is considered "hard-core" pornography. *See Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Moreover, the material must not have any serious literary, artistic, political, or scientific value, an objective standard. *Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987). These requirements are quite specific; a person of ordinary intelligence need not guess as to their meaning.

The remaining elements of the obscenity definition are less precise. However, due process does not require total precision of statutory provisions. *People v. Nissen,* 650 P.2d 547 (Colo.1982); *Weissman v. Board of Educ.,* 190 Colo. 414, 547 P.2d 1267 (1976). The requirements that the material appeal to a prurient interest in sex and be patently offensive as measured by the community's standard of tolerance provide "fair notice to a dealer in such materials that his public and commercial activities may bring prosecution." *Miller,* 413 U.S. at 27, 93 S.Ct. at 2616. It is true that a person must estimate the community's level of tolerance and whether an average person would find that the material appeals to the prurient interest, but, as Justice Holmes noted in *Nash v. United States,* 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232 (1913), "the law is full of instances where a man's fate depends on his estimating rightly...."

That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is not a sufficient reason to hold the language too ambiguous to define a criminal offense. *Miller,* 413 U.S. at 28 n. 10,

93 S.Ct. at 2617 n. 10; *Nissen,* 650 P.2d at 552. We do not believe that the term "community standards" is any less clear than the "reasonable person" standard which has been used for generations in other contexts. *See Pinkus v. United States,* 436 U.S. 293, 98 S.Ct. 1808, 56 L.Ed.2d 293 (1978). This court has often held that a penal statute framed so as to require the jury to determine a question of reasonableness does not make it too vague to afford a practical guide to acceptable behavior. *People v. Smith,* 638 P.2d 1 (Colo.1981). We are satisfied that the Colorado obscenity statute is not so totally lacking in discernible standards of conduct as to require its invalidation. *See Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, which holds that the specific requirements incorporated in our statute provide fair notice as to the proscribed conduct when measured by common understanding and practices.

■ For these same reasons, we believe the obscenity statute provides sufficiently adequate standards to enable courts and juries to apply the law consistently. The trier of fact must apply specific standards to material before it may be labeled "obscene." In addition, an appellate court may use these same standards in order to review a determination that particular material is obscene. Thus, there exists little danger of arbitrary and capricious enforcement of this statute. The mere fact that juries may reach different conclusions as to the same material does not mean that constitutional rights are abridged. *See Miller,* 413 U.S. at 26 n. 9, 93 S.Ct. at 2616 n. 9.

The trial court in *People v. Ford,* found that criminal liability could not be premised on community opinion rather than a specific act, citing *LDS, Inc. v. Healy,* 197 Colo. 19, 589 P.2d 490 (1979). In *Healy,* we determined that a statute which permitted revocation of a subdivider's license on the basis of his reputation or his engaging in unethical practices was void for vagueness. The statute was invalidated on the grounds that premising a license on community opinion provides no fair warning as to what conduct is prohibited and creates a danger

of arbitrary and capricious revocation. We do not believe that *Healy* controls this case. Here, the specific conduct which is prohibited is the dissemination of obscenity. Moreover, where the statute provides specific standards by which the community opinion is guided, the dangers at which the "void for vagueness" doctrine are aimed disappear. *See R & F Enters. v. Board of County Comm'rs,* 199 Colo. 137, 606 P.2d 64 (1980) (statute provided standards to further define term "of good character and reputation"). Our obscenity statute specifically requires that material depict one of the enumerated acts in the statute, be of a hard-core nature, have no serious literary, artistic, political, or scientific value, appeal to a morbid or shameful interest in sex, and offend community standards of tolerance. These standards remove the vagueness inherent in premising liability on community opinion, and protect against arbitrary and capricious enforcement. For the foregoing reasons, we do not believe that the obscenity statutes, as written, are impermissibly vague.

### B.

The booksellers argue, and the trial court in *People v. Ford* agreed, that the obscenity statute premises criminal liability on the state of mind of a hypothetical "average" person, rather than on the defendant's state of mind. In addition, the trial court found that because the statute does not require that a defendant know that material is "obscene," the statute lacks a true criminally culpable *mens rea,* which serves to exacerbate its vagueness problems. Again, we disagree.

■ Section 18–7–102 imposes liability on a person who promotes obscene material if he knows its contents and character. Thus, the statute requires that a particular defendant act "knowingly," which is a clearly defined mental state. The defendant need not know that the material is "obscene." *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Rosen v. United States,* 161 U.S. 29, 16 S.Ct. 434, 40 L.Ed. 606 (1896). However, knowledge that the material is ob-

scene is not necessary to satisfy the constitutional requirement of scienter:

It is constitutionally sufficient that the prosecution show that a defendant had knowledge of the contents of the materials he distributed, and that he knew the character and nature of the materials. To require proof of a defendant's knowledge of the legal status of the materials would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law. Such a formulation of the scienter requirement is [not] required ... by the Constitution.

*Hamling*, 418 U.S. at 123–24, 94 S.Ct. at 2910–11. We believe the trial court erred in finding that the obscenity statute lacks a true criminally culpable *mens rea.*

■ We also do not find that the statute premises liability on the mental state of a third party. In *People v. Johnson,* 193 Colo. 199, 564 P.2d 116 (1977), we invalidated the theft by receiving statute because it imposed liability on a person who disposed of an item "having reasonable cause to believe" that the item had been stolen. We held that "[t]he standard of culpability, in order to be constitutional, must be what the state of mind of the particular defendant was, not what a jury concludes might be that of a fictional reasonably prudent man." *Id.* at 200, 564 P.2d at 117–18. However, the obscenity statute clearly provides that the defendant must act "knowingly." The "average person" standard only modifies the requirement that the challenged material appeal to the prurient interest in sex. This use of the "average person" standard is different from the use of the "reasonable person" standard in *Johnson,* where the reasonableness language appeared as a mental state required for committing the crime. Here, the "average person" standard is not an element of knowledge or mental state required to commit the crime. *See People v. Moore,* 674 P.2d 354 (Colo.1984). Therefore, liability is not premised on the mental state of a hypothetical average person.

C.

■ The booksellers also contend that the obscenity statute premises liability on the discretionary act of a third party, citing *People v. Vinnola,* 177 Colo. 405, 494 P.2d 826 (1972). In *Vinnola,* we found the bad check law to be constitutionally unsound because the decision of the bank, in honoring or refusing to honor a check drawn on an account which lacked sufficient funds, would establish a prima facie case that the defendant had the intent to defraud and thus was guilty of a crime. We held that "[c]riminal liability and punishments should not be predicated upon a third party's unfettered discretion." *Id.* at 416, 494 P.2d at 831. The booksellers argue that because the act of disseminating material does not become a crime until the material is declared obscene, criminal liability is premised on the unfettered discretion of the jury who declares the material obscene. However, the criminality of promoting obscene material does not depend upon the subsequent action of a third party, as in *Vinnola.* The promoted material is obscene before and after the defendant's act; it does not suddenly become obscene only after a jury so decides. Thus, the criminal act is complete at the moment that the defendant disseminates the material, and is not dependent on a third party's discretion. *See People v. Edmonds,* 195 Colo. 358, 578 P.2d 655 (1978). Any other construction would be absurd, because it is always necessary for a trier of fact to make such determinations before criminal liability is imposed. We accordingly reject the booksellers' contention.

V.

Mountains and Plains Booksellers Association (Association) contends that section 18–7–104.5, which provides civil remedies to real property owners in the vicinity of an enterprise which has promoted obscenity, when combined with the vague definition of obscenity, unconstitutionally chills freedom of expression. Although the Association raised this contention in its complaint, the trial court did not rule on the issue. We have already held that the definition of obscenity is not vague. However, we decline to address the constitutionality of the

civil remedies because the issue has been raised prematurely.

■ Declaratory judgment is not available simply for advisory purposes when no real controversy exists. *Three Bells Ranch Assocs. v. Cache La Poudre Water Users Ass'n,* 758 P.2d 164 (Colo. 1988). The legal controversy presented must be a current one rather than one that may arise at some future time. *Heron v. City & County of Denver,* 159 Colo. 314, 411 P.2d 314 (1966). Here, no civil action has been commenced by real property owners against the Association and the complaint does not allege that such civil suit is imminent. Although suit may be brought at some time in the future, there is no current controversy which may result in application of the challenged civil remedies.

In addition, the defendants in this case are not proper parties to defend a private person's right to civil remedies under the statute. The Association brought this declaratory judgment action against the Denver District Attorney, the Denver Manager of Safety, and the Denver Chief of Police, all acting in their official capacity. Although these parties are proper defendants in a challenge to the criminal provisions of the obscenity statute, the Association has not demonstrated "concrete adverseness vis-a-vis the defendants sufficient to assure the effective presentation of the issues underlying the [constitutionality of the civil remedies]." *State Bd. for Community Colleges & Occupational Educ. v. Olson,* 687 P.2d 429 (Colo.1984).

Because the trial court made no ruling on the constitutionality of the civil remedies, there is no actual controversy in existence which would entitle the Association to a determination, and the proper parties are not before the court, we hold that this issue is not ripe for review.

The judgment of the district court in *People v. Ford,* No. 87SA61, is reversed and the case remanded with instructions to reinstate the information. The judgments of the district court in *Mountains and Plains Booksellers Association v. Early,*

No. 87SA480, and *735 East Colfax, Inc. v. Early,* No. 88SA3, are affirmed.

ERICKSON, J., concurs in the result only.

ERICKSON, Justice, concurring in the result only:

I respectfully concur in the result because I disagree with the analysis and the breadth of the majority decision. I agree with that part of the majority opinion that holds "that defining 'patently offensive' in terms of tolerance does not impermissibly reach protected speech, and therefore is not overbroad." Maj. op. at 1066. This decision is the most recent in a series of decisions by this court determining the constitutionality of Colorado's obscenity statute, now codified at sections 18–7–101 to –105, 8B C.R.S. (1986). *See People v. Seven Thirty–Five East Colfax,* 697 P.2d 348 (Colo.1985); *People v. New Horizons, Inc.,* 616 P.2d 106 (Colo.1980); *People v. Hildebrandt,* 190 Colo. 167, 544 P.2d 384 (1976); *Menefee v. City and County of Denver,* 190 Colo. 163, 544 P.2d 382 (1976); *People v. Tabron,* 190 Colo. 161, 544 P.2d 380 (1976) (*Tabron II*); *People v. Tabron,* 190 Colo. 149, 544 P.2d 372 (1976) (*Tabron I*).

The majority's analysis of the Colorado obscenity statutes and the Colorado Constitution does not, in my opinion, square with our former precedent, the issues addressed when article II, section 10 of the Colorado Constitution was adopted, or the legislative history in formulating statutes enacted to comply with the mandates of the United States Supreme Court. In my view, the majority overemphasizes the importance of the Colorado Constitution's framers' intent, even going so far as to speculate that the framers' "silence" means that obscenity "was considered an 'abuse' of the freedom of speech." Maj. op. at 1065. *Compare Parrish v. Lamm,* 758 P.2d 1356 (Colo. 1988) (recognizing that article II, section 10 of the Colorado Constitution provides broader protection for freedom of speech than the first amendment to the United States Constitution); *People v. Seven Thirty–Five East Colfax Inc.,* 697 P.2d 348 (Colo.1985) (same); *Tabron I,* 190 Colo.

149, 544 P.2d 372; *In re Canon 35*, 132 Colo. 591, 296 P.2d 465 (1956) (same) *with* slip op. at 1065 (depicting obscenity regulation as the result of the Colorado Constitutions's framers' intent). The "Proceedings of the Constitutional Convention," published in 1907 by the Colorado Secretary of State, contains no separate discussion of article II, section 10 at any point in which the "Bill of Rights" was reported by subcommittee. *Proceedings of the Constitutional Convention*, 90, 143, 376, 487, 523, 525, 664 (1907). The "Address to the People" in the proceedings in support of adoption of the Colorado Constitution indicates that the Bill of Rights in the state constitution simply retains "the usual guarantees of national and civil rights," except in the particulars mentioned which do not include any reference to freedom of speech. *Id.* at 723–24. Accordingly, there is no suggestion in the *Proceedings* that the framers of the Colorado Constitution intended to limit the free speech guarantees afforded by the first amendment or exclude obscenity from the protections afforded by article II, section 10 of the Colorado Constitution. It is also noteworthy that on March 14, 1876, when our constitution was adopted, a territorial law on obscenity was in existence which provided:

> If any person shall hereafter bring or cause to be brought or imported into this territory, for sale, or shall sell or offer to sell any obscene book, pamphlet or print, every such person shall, on conviction, be fined in a sum not less than twenty-five dollars, nor more than two hundred dollars.

Gen.Laws of Colo., ch. XXII, div. X, § 129 (1868). In 1877, the identical law was reenacted by the General Assembly substituting the word "state" for "territory." Gen. Laws of Colo. ch. XXIV, div. X, § 133 (1877). In 1885, the obscenity statute was broadened to prohibit the sale, possession, or exhibition of any "obscene, lewd, or indecent, or lascivious publication." 1885 Colo. Sess. Laws 172. The statute specifically banned any newspaper or magazine containing pictures of "nude, or partly nude, men or women, or pictures of men or women in indecent attitudes or positions."

*Id.* This statute remained the source of obscenity law in Colorado until 1969, when the General Assembly enacted new legislation. §§ 40–28–1 to –10, C.R.S. (1969). The new statute defined obscenity as any material that appealed to a person's prurient interest in sex and was "utterly without redeeming social value." § 40–28–1.

In my view, neither *Cooper v. People*, 13 Colo. 337, 22 P. 790 (1889), cited by the majority, nor any other case, supports the statement that the "framers of our constitution did not consider obscenity to be protected expression." *Cooper* was a contempt proceeding arising out of the publication of certain articles and a cartoon relating to a pending case. Obscenity was not an issue in that case, and *Cooper* does not support the constitutional analysis set forth in the majority opinion.

In *Tabron I*, we reviewed the basis for the enactment of the first amendment and stated that whether the framers of our federal constitution were influenced by the common law experience with obscenity was an unresolved issue. *Tabron I*, 544 P.2d at 374. History suggests that the colonists had no desire to impose the English common law limitations on freedom of speech and freedom of press upon the citizens of the United States. *Id.*

I cannot accept the conclusion that territorial laws, laws enacted by other states, and the laws enacted by the General Assembly soon after Colorado became a state provide evidence that the framers of the Colorado Constitution did not consider obscenity to be protected speech. Slip op. at 1065, 1066. Colorado cases interpreting the Colorado Constitution and the statutory regulation of obscenity were decided long after the constitution came into being. The modern law of obscenity that controls the first amendment issues in this case is derived primarily from *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). *See generally*, J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 1016–27 (2d ed.1985). In construing the first amendment to the United States Constitution, we are required to follow the decisions of the United States Supreme Court, but

we are at liberty to interpret article II, section 10 of the Colorado Constitution. The General Assembly has repeatedly followed the blueprint which this court has provided to comply with the decisions announced by the Supreme Court of the United States and, although the most recently enacted obscenity statute is not perfect, it passes constitutional muster.

In the seminal decision of *Tabron I*, we conducted an extensive analysis of obscenity regulation including the United States Supreme Court's pronouncement in *Miller*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). We relied upon the three-part test for identifying obscenity set forth in *Miller* [1] and acknowledged that *Miller* abandoned the "utterly without redeeming social value" test promulgated in *A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Commonwealth of Massachusetts*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). The defendant in *Tabron I* was convicted of promoting obscenity in violation of the Colorado obscenity statute.[2] § 40–7–101(1) & (2), 8 C.R.S. (1971). We analyzed the obscenity statute against the backdrop of the *Miller* test and concluded that under the standards promulgated by the United States Supreme Court, the statutory definition of "obscene" was overbroad.[3] *Tabron I*, 190 Colo. 149, 158–59, 544 P.2d 372, 378–79. We held that the obscenity statute violated the second part of the *Miller* test because it failed to describe what constituted an "ultimate sexual act." *Id.* at 159, 544 P.2d at 379. We declined, however, to judicially rewrite the obscenity statute and

provided direction to guide the General Assembly to enact an obscenity statute that would meet the *Miller* standards.

When *Tabron I* was decided, we issued a number of companion cases based upon the *Tabron I* holding. *See Hildebrandt*, 190 Colo. 167, 544 P.2d 384 (upholding dismissal of obscenity charges); *Menefee*, 190 Colo. 163, 544 P.2d 382 (striking down a municipal ordinance as unconstitutionally vague and overbroad for failing to describe with requisite specificity the sexual conduct which cannot be depicted, thereby violating the *Miller* standard); *Tabron II*, 190 Colo. 161, 544 P.2d 380 (in applying the *Miller* standard, a statewide community standard must be employed).

In response to our decision in *Tabron I*, the legislature repealed and reenacted the definitional portion of the obscenity statute, effective July 1, 1976. Ch. 97, secs. 1–6, §§ 18–7–101 to –402 and § 31–15–401, 1976 Colo. Sess. Laws 555–60. The reenacted statute stated:

> "Obscene material" means that material, as defined in subsection (4) of this section, which:
>
> (a) Taken as a whole, appeals to the prurient interest of the average person, applying contemporary community standards; and
>
> (b) Depicts or describes hard-core sexual conduct; and
>
> (c) Taken as a whole, lacks serious literary, artistic, political, or scientific value.

§ 18–7–102(6), 8 C.R.S. (1976 Supp.). The 1976 statute, then, substantially adopted

---

1. The three-part test or set of standards articulated in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), for identifying obscene material is:

   "(a) Whether 'the average person applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest ...;

   (b) Whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

   (c) Whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value."

   *Tabron I*, 190 Colo. at 156, 544 P.2d at 376–77 (quoting *Miller*, 413 U.S. at 24, 93 S.Ct. at 2614).

2. Although the cases repeatedly reference the obscenity statutes in their entirety, the focus of the constitutional challenges has been the definitional sections of the statutes.

3. Section 40–7–101 defined obscene material as "that which, considered as a whole, predominately appeals to prurient interest, i.e., a lustful or morbid interest in nudity, sex, sexual conduct, sexual excitement, excretion, sadism, masochism, or sado-masochistic abuse, and which goes substantially beyond customary limits of candor in describing, portraying, or dealing with such matters and is utterly without redeeming social value."

the *Miller* standard and complied with the holding of *Tabron II,* requiring the use of a statewide community standard.[4]

Four years later, we addressed the constitutionality of the newly enacted Colorado obscenity statute in *People v. New Horizons, Inc.,* 200 Colo. 377, 616 P.2d 106 (Colo.1980). We focused on section 18–7–101(5), 8 C.R.S. (1980 Supp.), the section of the statute that defined "material" for use in the definition of "obscene material."[5] We determined that the statute was unconstitutional because the statute excluded "the printed or written word" from the definition of "obscene material." *New Horizons,* 200 Colo. at 383, 616 P.2d at 110. The exclusion of printed or written words mandates that the material be considered without accompanying words and accordingly does not permit the trier of fact to consider the disputed work "as a whole" as required by *Miller. Id.* Because section 18–7–101(5) violated *Miller,* we struck down the entire statute.

In response to our decision in *New Horizons,* the General Assembly again reenacted the definitional sections of the obscenity statute, effective July 1, 1981. Ch. 223, secs. 1 to 3, §§ 18–7–101 to –106, 1981 Sess. Laws 998–1002. The reenacted definition of "material" stated:

> "Material" means anything tangible that is capable of being used or adapted to arouse interest, whether through the medium of reading, observation, sound, or in any other manner, but does not include an actual three dimensional obscene device.

We again considered the constitutionality of the obscenity statute five years later in *People v. Seven Thirty–Five East Colfax, Inc.,* 697 P.2d 348 (Colo.1985). In that case the district attorney commenced a civil action for injunctive relief to have certain items declared obscene pursuant to section 18–7–103, 8 C.R.S. (1984 Supp.).[6] Seven Thirty–Five East Colfax, Inc. defended on the ground that the obscenity statute is unconstitutional, both facially and as applied. We held that various terms and phrases in the obscenity statute were unconstitutional. Rather than striking down the entire statute, we severed the unconstitutional language. *Seven Thirty–Five,* 697 P.2d at 371–74.

Accordingly, the current obscenity statute has been developed over the last thirteen years through the legislative response to our decisions holding that specific sections or words did not meet constitutional scrutiny when measured against *Miller* and its progeny. *See generally,* Richardson, *Obscenity Law in Colorado: The Struggle to Pass a Constitutional Statute,* 60 Den. L.J. 49 (1982). The guidepost for our review has consistently been the standards on obscenity articulated by the United States Supreme Court in *Miller.* The majority opinion erroneously references the " 'framers' " view of obscenity and bases a significant part of its analysis on whether or not the statute is constitutional based on the framers' intent when the Colorado Constitution was enacted. The process of judicial and legislative reevaluation of the definition of obscenity requires a narrow interpretation of the obscenity case and statutory law and does not mandate a broad reading grounded upon a strict construction of the Colorado Constitution.

Material which may be labeled "obscene" has been primarily measured by first amendment standards, as reflected in *Miller.* As first amendment law has evolved, so has our view of what material is "obscene." Certainly, what was obscene in the 1800's at the time the Colorado Consti-

---

4. The obscenity statute was repealed and reenacted with amendments in 1977, however, the amendments were minimal and did not affect the 1976 wholesale redrafting of the definitions of obscenity. *See* Ch. 231, sec. 1, § 18–7–101, 1977 Colo.Sess.Laws 982–86.

5. Section 18–7–101(5) provides:
   "Material" means any physical object, facsimile, recording, transcription, pictorial represen-

tation, motion picture, or reproduction, whether mechanical, electrical, or chemical, which is used as a means of communicating sensation or emotion to human beings to or through the visual, aural, or tactile senses, but does not include the printed or written word.

6. Section 18–7–103 was reenacted in 1981 as part of the reenactment of the entire obscenity statute.

tution was drafted might not be obscene today. It is clear that no decisions of the United States or Colorado Supreme Courts at the beginning of the twentieth century dealt with first amendment issues relating to obscenity. Regardless of what the intent was at the time the Colorado Constitution was framed, we will continue to be confronted with difficult issues regarding the definition of obscenity when measured by the decisions of the United States Supreme Court and our Colorado Constitution. The community standards popular in the 1800's can hardly be said to be applicable to either the definition or law of obscenity today.